(No. 33617.—

S: H. KROM *et al.*, Appellees, *vs.* THE CITY OF ELMHURST, Appellant.

*Opinion filed March 22, 1956.*

George E. Billett, of Chicago, (Ervin F. Wilson, of counsel,) for appellant.

Rathje & Woodward, of Wheaton, (Alfred E. Woodward, of counsel,) for appellees.

Mr. Justice Daily delivered the opinion of the court:

The city of Elmhurst here appeals from a judgment of the circuit court of Du Page County holding the city zoning ordinance, as amended, unconstitutional and void in its application to a parcel of land owned by Chicago Title and Trust Company, as trustee, and for which S. H. Krom, who is an appellee here along with the company, has entered into a contract of purchase.

The disputed property, consisting of 3.35 acres, is located very near the southern limit of the city. It is bounded on the south by Butterfield Road for a distance of 275.5 feet, on the southeast for 259 feet by a triangular lot improved with a gasoline station, on the east by York Street for 273 feet, on the north by Van Buren Street for 246 feet, and on the west by Kendall Avenue for a distance of 551 feet. Plats in the record show that appellees' tract

and the triangular lot from which the gasoline station is operated consists of an entire block lying within the boundaries of the streets named. The block is vacant except for the gasoline station and it was the opinion of a witness that the vacant portion owned by appellees could be divided into 18 or 20 residence lots. Butterfield Road is a heavily traveled east-west traffic artery which connects the city of Chicago with the Fox River valley and over which passes Illinois Route 56. York Street, which is improved with a two-lane blacktop road in the area, is the main north-south street bisecting the city of Elmhurst and connects with the main business district some two and a half miles to the north. The intersection of Butterfield and York is a busy one and traffic is controlled by four-way stop signs. Kendall Avenue is but a block long and, like Van Buren Street, has no improved road where it adjoins appellees' land.

By a zoning ordinance enacted in 1924, the triangular lot where the gasoline station is presently located was given a commercial zoning classification which continues to this day. The balance of the block, however, was zoned residential. In 1951 the ordinance was amended to change the classification of the vacant property in the block to "A—single-family residence," the most highly restricted of all the zoning classifications employed. During March, 1954, Krom, as vendee under a contract to purchase the vacant portion of the block, made application to the city to rezone the property to a commercial classification, his intention being to erect a shopping center and accompanying parking facilities thereon. The application was denied by the zoning commission and such denial was concurred in by the city council. This action for a declaratory judgment followed with appellees' alleging, and the trial court holding, that the amended ordinance, as it applied to their property, bore no relation to the public health, safety, morals or welfare, and that it was an arbitrary and unreasonable regulation which deprived appellees of their property without due

process of law. On this appeal the city contends to the contrary and insists that its legislative judgment should not be disturbed.

The question of whether a zoning ordinance is arbitrary, unreasonable and capricious in its application to a given parcel of land, or whether it is reasonable and bears a substantial relation to the public welfare, is subject to review by the courts and, of necessity, each case must be decided upon its own particular facts. Chief among the factors to be given consideration are the use and zoning of nearby property, the character of the neighborhood, the extent property values are diminished, and the relative gain to the public as compared to the hardship imposed upon the owner. Since there is a presumption of validity in favor of a zoning ordinance adopted pursuant to a legislative grant, the one assailing its validity has the burden of proof that the ordinance is invalid or unreasonable and confiscatory as to his property. If it appears from all the facts that there is room for a difference of opinion concerning the reasonableness of a classification, the legislative judgment of the city council must be conclusive. For further exposition of these established principles see: *La Salle National Bank* v. *City of Chicago,* 5 Ill.2d 344; *Tower Cabana Club, Inc.* v. *City of Chicago,* 5 Ill.2d 11; *La Salle National Bank* v. *City of Chicago,* 4 Ill.2d 253; *Herzog Building Corp.* v. *City of Des Plaines,* 3 Ill.2d 206; *Miller Brothers Lumber Co.* v. *City of Chicago,* 414 Ill. 162.

The facts peculiar to the case at hand disclose that the disputed tract of land is, generally speaking, located adjacent to a commercial district which has been formed around the intersection of Butterfield Road and York Street in an area which, for a radius of approximately three fourths of a mile from the intersection, is otherwise zoned or used for residential purposes. The lots at the four corners of the intersection lie in commercial zones which, with the exception of the zone comprising the triangular lot adjoin-

ing appellees' property, extend in all four directions and on both sides of the streets from the intersection. Thus on Butterfield and York, respectively, the lands directly across from the disputed tract are zoned commercial for distances of approximately one block; on York south of Butterfield and on Butterfield east of York, the commercial zoning extends for 166 feet and 300 feet, respectively. The zoning to the west and north of appellees' property, across Kendall and Van Buren, is for single-family residences. Likewise, the areas adjacent to the commercial zones described are classified as residential both by city and county zoning regulations as they apply.

As previously stated there is a gasoline station on the triangular lot at the northwest corner of Butterfield and York. Appellees' land adjoins the triangle at its base and flanks it at the points where the sides of the triangle join the base. On the northeast corner of the intersection there is located a second gasoline station. To the north of this station there is located on the east side of York, and thus directly across from appellees' property, the following: a combination residence and television repair business, four residences, a combination residence and barber shop, and a combination residence and real-estate office. To the east of the same station, along the north side of Butterfield, there is a two-story building having an apartment upstairs and a carry-out food service on the first floor, an electric transformer station, and two residences. Still a third gasoline station is located on the southeast corner of the intersection and we gather from the testimony and photographic evidence that there are no other structures in the immediate vicinity. The fourth or southwest corner of the intersection is improved with a drive-in hamburger and ice cream stand. Immediately south of the stand, along the west side of York, is found a grocery store and meat market, and a real-estate office; to the west, along the south side of Butterfield and directly across from appellees' property, there is

located a combination grocery and liquor store and a parking lot for the customers of that business.

The lots which face appellees' land from across Kendall and Van Buren are vacant with the exception of a residence located at the northwest corner of Van Buren and York, which fronts on York. Kendall is but a block long and, just as Van Buren, has neither improved road, water, nor sewer. In regard to this condition, it was brought out at the hearing that the city has an ordinance prohibiting the erection of a building for human habitation on any lot or parcel within the city "unless highway, road, street or way for public service facilities, improved with water mains and sanitary sewers is provided to serve said lot or parcel of land." From a land use map in evidence it appears that the areas to the north and west of appellees' property are largely vacant and unimproved except for scattered residences and one concentration of residences about nine blocks west. The undeveloped condition of the area was attributed by several witnesses to the lack of water and sewer therein. To the east and north of appellees' tract there is, with the exception of the commercial properties already described, almost complete residential development over an area 14 blocks square. To the south, across Butterfield, there is again but scattered residences both in the small area of the city that is found there and in the unincorporated area adjoining.

Three real-estate brokers testifying for appellees valued the latters' property at $95,000 to $107,000 for commercial purposes, and at $25,000 to $30,000 for single family residence purposes. These estimates were in no way refuted by appellant. With regard to the properties situated in the commercial zones immediately to the east and south, appellees' witnesses were of the opinion their value would be increased by the rezoning. As opposed to this J. E. Vandivere, a real-estate expert called by appellant, testified only that houses in the commercial zone along the east

side of York Street would be reduced in value for residence purposes about 30 per cent. Two of appellees' witnesses testified that the vacant lots opposite appellees' property on Kendall and Van Buren had no value since the lack of an improved street, water and sewer prevented their use for single family residences, and because of this were of the opinion that the rezoning of appellees' tract would cause no depreciation in value; a third witness valued the same vacant lots at $600 apiece and stated that the commercial rezoning of appellees' land would depreciate their value about 25 per cent, or $125 each. It was Vandivere's opinion, however, that the lots on Kendall had a value of $20 per foot and those on Van Buren a value of $28 to $30 per foot. He testified that the rezoning sought would reduce the value of these lots by 50 per cent and was of the opinion that the next tiers of lots beyond those fronting on Kendall and Van Buren would be reduced by 30 per cent.

Witnesses for both sides told of the city's rapid population increase and accompanying building boom in recent years but reached different conclusions as to how such factors should affect the zoning of appellees' land. Similarly, they were at odds as to how the ever-increasing vehicular traffic at the intersection of York and Butterfield should influence the zoning. Those appearing for the city were of the opinion appellees' land was needed for residential purposes, and that a site three fourths of a mile to the east, which the city proposed to zone commercial, was better suited for a shopping center because it is located away from a congested corner and contains more area. Appellees' witnesses testified that the disputed tract was ideally situated for a shopping center since it was already the focal point for people seeking trade in the area and because it was located at a point where traffic was under control. Additionally, it was brought out that there are still many vacant lots in the area available for residence purposes, and that although the population in the area sur-

rounding appellees' property had increased 80 per cent from 1950 to 1954, no property therein had been rezoned for commercial use since 1930. The same witnesses were of the opinion that more shopping facilities were needed in the area in question.

A consideration of all the facts and circumstances impels the conclusion that the circuit court was correct in finding the zoning ordinance, as amended, to be unreasonable, confiscatory and void in its application to appellees' property. Since *Forbes* v. *Hubbard,* 348 Ill. 166, where the zoning at the busy intersection of Harlem and Chicago avenues in the city of Chicago was under consideration, this court has given cognizance to the rule that in zoning territory of such a character, dividing lines of districts should be fixed in such a manner as to avoid making one side of a main artery of travel purely residential when the opposite side is already used as a business zone in such a manner as to establish its character in that regard. At the same time, however, we recognized in *Mundelein Estates, Inc.* v. *Village of Mundelein,* 409 Ill. 291, that a main artery of travel may, in some instances, constitute so natural and proper a dividing line between commercial and residence zones as to cause the property on one side of the highway to take its character from the residential district it adjoins rather than the commercial zone it faces. Relying upon the latter case, which bears no similarity on the physical facts involved, appellant insists that appellees' property is characterized by the residential zones lying to the north and west. It is quite evident, however, that the predominant feature of the whole area affected is the intersection of Butterfield and York where, because of zoning regulations in effect since 1930, a center of trade has been developed on properties occupying the same relative position to the intersection as does the property of appellees. As situated, appellees' tract is a natural component part of the commercial district which has been permitted to

develop in all directions from the intersection. When this feature is considered along with the comparative physical aspects and traffic experience of Butterfield and York on the one hand, and Kendall and Van Buren on the other, it is apparent that appellees' tract does not take its character from the residence zones of surrounding areas but, rather, from the commercial zone adjoining it and the similar zones it faces across the streets of the intersection. In this, and other physical aspects relating to the reasonableness of the zoning regulations under consideration, the disputed property is to be distinguished from those under consideration in *Herzog Building Corp.* v. *City of Des Plaines,* 3 Ill.2d 206, and *La Salle National Bank* v. *City of Chicago,* 4 Ill.2d 253, which appellant cites as being persuasive here. In view of the extent of the commercial zoning permitted on three sides of the intersection, no reasonable basis of public welfare suggests itself for the restricted zoning on the segment of the intersection where appellees' land is found.

Taking into consideration photographs of nearby structures, traffic charts reflecting conditions at the intersection, the testimony of the expert witnesses, and the evidence showing the disputed tract to be adjoined by a commercially zoned lot of irregular size that is improved with a gasoline station, it is quite evident that the portion of appellees' property which abuts on Butterfield and York has little desirability for residential purposes. Under a continued single-family residence classification this portion of the property would in all probability degenerate into permanent vacant property which would be unsatisfactory both for aesthetic and tax considerations. That this is so would seem to be borne out by the fact that no human habitation has been built on the land during the 25-year period that it has been zoned for residences, even though the city has experienced a tremendous building boom in the past eight years. The balance of appellees' tract, abutting on

Kendall and Van Buren, cannot be used for residential purposes until such time as those streets are improved with water and sewer. Thus the combined effect of the two police measures enacted by the city is, under the present conditions, such as to render much of appellees' land unusable for any purpose. Zoning ordinances restricting a certain area to residential use have long been held void as to property located in such area but so situated, in its relation to a commercial zone, as to render it peculiarly unattractive and of little value for residential purposes, if at all salable therefor. (*Tews* v. *Woolhiser*, 352 Ill. 212; *People ex rel. Lind* v. *City of Rockford*, 354 Ill. 377; *Petropoulos* v. *City of Chicago*, 5 Ill.2d 270.) The physical location and zoning of the premises under consideration brings the city's ordinance within the rule of the cited cases.

In determining whether the invasion of property rights under a purported police power is unreasonable and confiscatory, the degree in which the values incident to affected properties are diminished by provisions of the zoning ordinance must also be considered. (*State Bank and Trust Co.* v. *Village of Wilmette*, 358 Ill. 311.) Insofar as the vacant lots opposite appellees' property along Kendall and Van Buren are concerned, opposing witnesses ranged from one extreme to the other in expressing opinions both as to their value and the diminution of value which would result if appellees were permitted to use their land for the commercial purpose desired. Two of appellees' witnesses testified the lots had no value for residence purposes inasmuch as habitations could not be built thereon until such time as the streets were improved with water and sewers. There was, however, no evidence given to show that such improvements were unattainable, or that their cost would be prohibitive, thus we think such opinions on value to be unpersuasive. Of greater significance was their testimony that the area had little to induce persons to build homes in the area, and their opinion that the shopping center pro-

posed by appellees would be instrumental in speeding residential development. On this basis, and from past experience, they stated that the shopping center would have the effect of creating a market for the lots on Kendall and Van Buren and of increasing their value. A third witness for appellees testified that the lots in question had a value of $600 each and that the commercial use of appellees' premises would diminish such value by 25 per cent, or $125. Vandivere, the expert witness called by appellant, testified that the value of the lots ranged from $20 to $30 per foot and that the diminution would be 50 per cent in the case of the lots on Kendall and 25 per cent in the case of those on Van Buren. This opinion, it appears, was based on the noise, traffic hazards and unsightliness which he felt would accompany a commercial use. On cross-examination, however, he stated that if the business structure was attractive and the premises landscaped, his estimates of diminution would be lowered by 5 to 10 per cent. He agreed with appellees' witnesses that there was no present market for such lots because of the absence of water and sewers.

With regard to the properties situated in the commercial zones to the east and south of the disputed premises, appellees' witnesses all testified their value would be increased by the development of the proposed shopping center. Vandivere, when testifying for appellant, did not contradict such conclusion but testified only that the value of residence properties located in the commercial zone along the east side of York, (which he estimated were already reduced in value by 43 per cent because of existing commercial uses and the traffic on York,) would further be reduced in value *for residence purposes* by 30 per cent. Such an opinion, we believe, has but little probative value when it is considered that several of the residences are being used for commercial purposes and that all are located in a commercial zone. The record shows that the deeds to these

residence lots contained a covenant that they would not be used for commercial purposes until 1969, but it is quite apparent that it is not being enforced. Under the circumstances it is doubtful that any substantial diminution in the value of such properties would in fact be effected by the presence of one more commercial use in the area. Cf. *Northern Trust Co.* v. *City of Chicago*, 4 Ill.2d 432.

As opposed to the testimony relating to the value of surrounding properties, appellees' uncontradicted evidence is that to enforce the single-residence classification would depreciate their property from approximately $100,000 to $27,000. While the element of property value is not controlling in passing on the validity of a zoning ordinance, it is an element that must be considered, and where a destruction of value occurs the test to be applied is whether such destruction promotes the public health, safety, morals or general welfare. Applying this test to the record before us, we find nothing to indicate that any public need or consideration demands such a confiscation of values as would be made here. (See: *Midland Electric Coal Corp.* v. *County of Knox*, 1 Ill.2d 200, 214; *Chicago Title and Trust Co.* v. *Village of Franklin Park*, 4 Ill.2d 304, 306; *Bullock* v. *City of Evanston*, 5 Ill.2d 22, 34.) The hardship to appellees is apparent and uncontradicted; on the other hand the gain or detriment to nearby property owners is uncertain. Also there is sufficient credible evidence upon which to base a belief that the additional shopping facilities are needed by the community and that the use proposed by appellees would enhance the value of surrounding properties, residential and commercial alike, in that it would open up the development of an area which heretofore has had little attraction to residence builders. In such a manner the appearance of the area will be improved and additional tax revenues will be realized to the benefit of the whole community. Considering the evidence in its entirety, we think it manifest that the benefit, if any, which the public receives

from the existing ordinance is slight when compared to the extreme hardship imposed upon the appellees.

When the element of property values is considered together with the area zoning and physical features which have caused appellees' property to become best adapted to commercial use, it is our considered judgment that the questioned ordinance, which restricts the said property to single-family residence use, is unreasonable and void, and has the effect of depreciating the property to the point of confiscation without corresponding benefit to the public generally. For these reasons, therefore, the judgment of the circuit court of Du Page County is affirmed.

*Judgment affirmed.*