Hugh Locker, et al., Plaintiffs-Appellees, v. The City of McHenry, a Municipal Corporation of Illinois, Defendant-Appellant.

Gen. No. 67–36.

Second District.

December 12, 1967.

Jack M. Siegel, and Ross, Hardies, O'Keefe, Babcock, McDugald & Parsons, of Chicago, for appellant.

Panter, Nelson and Bernfield, of Chicago, and Kell and Conerty, of Woodstock, for appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The defendant, the City of McHenry, appeals from an order of the Circuit Court of McHenry County that held that the Amending Zoning Ordinance of the city was void as applied to the plaintiff's property and further declaring that the property could lawfully be used for an automobile service station.

The property in question is a single parcel of approximately 28,000 square feet located on the southwest corner of Elm and Third Streets in the business section of the City of McHenry. The plaintiffs, Lockers, entered into a lease with the then owners of the property, the Scholles, in 1956 with an option to purchase. The Lockers exercised that option in 1961 and signed a contract to purchase the property from the Scholles for the price of $45,000 to be paid on an installment basis with the Scholles to retain legal title to the property as security until at least $22,500 had been paid.

The property is improved with a retail nursery shop and adjoining greenhouse, potting shed and garage. There is also a residence occupied since 1956 by the Lockers who also operate the florist shop. In 1963, the

Humble Oil Company signed an option to purchase approximately 16,000 square feet of the property from the Lockers for the price of $48,500 subject to the condition that Humble Oil would be able to construct and operate an automobile service station on it. That portion optioned to Humble has a frontage on Elm Street and it would be possible for the Lockers to relocate the buildings and continue their nursery business on the rear portion of the lot.

In 1951, the City of McHenry enacted a Zoning Ordinance that classified most of the Elm Street area, including the Locker property, as "B" for business use. Under a "B" classification, the property could be used for a wide variety of business uses including service stations and florist shops. In 1960, a Comprehensive Plan Report was prepared for the City by the consulting firm of Stanton and Rockwell that recommended that the area be reclassified as "B–1," a classification that would also permit service stations. In 1962, the City enacted its Amended Zoning Ordinance that did reclassify the area as "B–1" but omitted service stations as a permitted use under that categorization. The Lockers in 1963 petitioned the City for a reclassification of their property to "B–2" or "B–3" to permit the service station or, in the alternative, to interpret the "B–1" classification to include such a use. After appropriate public hearings and administrative action, that petition was denied by the City and the plaintiffs instituted this action in the lower court requesting that the court declare the ordinance invalid as applied to their property and a further finding that the property could be used for a service station.

■ ■ A zoning ordinance, like all other legislation, is presumed to be valid and the party who attacks it must overcome that presumption of validity by clear and convincing evidence that, as applied to him, the ordinance is arbitrary and unreasonable and is without substantial relation to the public health, morals, safety and welfare.

459

Trendel v. County of Cook, 27 Ill2d 155, 161, 188 NE2d 668; Bennett v. City of Chicago, 24 Ill2d 270, 273, 181 NE2d 96.

■ The courts of this State have utilized a number of factors, frequently reiterated in the reported cases, to consider in the determination of the validity of zoning ordinances. These factors include the existing uses and zoning of nearby property; the extent property values are affected by the particular classification; the promotion of the public welfare; the relative gain to the public as compared to the hardship upon the property owner; and the suitability of the property for the purpose zoned. Garner v. City of Carmi, 28 Ill2d 560, 564, 192 NE2d 816; LaSalle Nat. Bank v. County of Cook, 12 Ill2d 40, 46, 47, 145 NE2d 65. To those often repeated factors, the courts later added more intangible items for consideration such as the care with which the legislative body planned its land use development and the community need for the use proposed by the property owner. Sinclair Pipe Line Co. v. Village of Richton Park, 19 Ill2d 370, 378, 167 NE2d 406; Hoffmann v. City of Waukegan, 51 Ill App2d 241, 244, 201 NE2d 177.

It is the contention of the City that it must be concluded that the presumptive validity of the zoning ordinances was not overcome when these criteria are applied to the circumstances of this case. The City also contends that the evidence presented to the trial court demonstrated that the zoning ordinance was in fact a reasonable and proper use of the legislative power and that the trial court committed reversible error by its refusal to consider certain relevant, competent evidence offered to it. To evaluate these contentions, it is necessary to briefly relate the evidence presented.

The Locker property is located on the southwest corner of Elm and Third in an expanding business section of McHenry. From Third Street to the next block west, Front Street, the lots on the south side of Elm are used for a drapery shop, an upholstery shop, a music shop, a

new Ace Hardware store, a funeral home and two service stations. On the north side of Elm, from Front back to Third Street, there is a tavern, a department store, a newspaper publisher, a cleaning shop, a drugstore, a Jewel Food store, an A & P food store and another cleaners. Across Third to the east, on the south side of Elm, there is a new National Tea, an American Legion hall and further east, across Boone Creek, a savings and loan association, a repair garage and a service station at the intersection of Richmond Road with Elm Street. On the north side of Elm from Richmond back to Third Street to the west is a service station, a fire station, a marina on Boone Creek, and across the creek, another service station and a toy store on the north east corner of Elm and Third.

Most of this area was rezoned from "B" to "B–1" under the 1962 Amended Zoning Ordinance. As a result, 4 of the 5 service stations enumerated were rendered nonconforming uses. Elm Street is a four-lane highway, with two additional parking lanes. At this location it is also State Routes 120 and 31. There was evidence that in 1965 an average of 13,900 automobiles a day used Elm Street in this vicinity.

Herbert Harrison, a real estate appraiser, testified for the plaintiffs as an expert witness. It was his opinion that the portion of the Locker property under option to Humble Oil had a market value of $49,000 in 1962 if it could be used as a service station and a market value of $24,900 for the uses permitted under the "B–1" zoning and that both values had probably increased "about 10%" since that time. It was also his opinion that a service station on the site would not affect the property values of neighboring property. Rolf Campbell, a professional city planner, testified for the plaintiffs and stated that because of the nature of the area, a service station would be a logical and compatible use for the Locker property and that it would have a favorable effect on nearby businesses.

461

The main thrust of the evidence presented by the City was to demonstrate the care and logic used in the creation of the Amended Zoning Ordinance. Numerous witnesses testified that it was necessary to preserve a pattern of compatible businesses to insure the continued growth and vitality of its business core. The Elm and Third Street area was characterized as a "pedestrian shopping district" that encompassed multiple "compatible" uses where prospective shoppers could walk from store to store and consequently add to the economic health of all. A service station, in their opinion, would inevitably disrupt this flow of pedestrian traffic and frustrate the designs of the city planners. The owners of three nearby retail businesses testified that a service station at this location would reduce the number of customers that would visit their stores in the course of their shopping activities.

The trial court considered the evidence, thus presented, and filed a Memorandum Opinion to support its decision. The court found that the area was in fact dominated by automobile, not pedestrian, traffic; that the Lockers suffered a financial hardship as a result of the restrictions imposed on their property; that there was no evidence that another service station in the area would have a deleterious effect on surrounding property values; that there was no demonstrated public good to be realized by the restrictions; and that, therefore, the ordinance as applied to the subject property, was "arbitrary, capricious, unreasonable and bears no substantial relation to the public health, comfort, safety and welfare, and accordingly is void."

■ ■ The findings of the trial court on these matters should not be disturbed unless they are contrary to the manifest weight of the evidence. Scott v. City of Springfield, 83 Ill App2d 31, 33, 226 NE2d 57; LaSalle Nat. Bank of Chicago v. Village of Skokie, 62 Ill App2d 82, 89, 210 NE2d 578. From our examination of the record, we are in accord with the finding of the trial court.

462

There is no dispute that the area under consideration is zoned for and dominated by business uses. An aerial photograph that appears in the record lends persuasive support to the conclusion of the trial court that the area is oriented to the uses of the automobile despite the intentions of the city planners to create a pedestrian shopping district. The presence of five other service stations on both sides of Elm Street within a 4- or 5-block area, the sizable parking lots used in conjunction with the 3 retail grocery stores, the width of Elm Street and the large number of automobiles that appear on it, all indicate that the designs of the City were, at least to this property, unrealistic.

■ ■ We would agree with the City that the community need for another service station is debatable. However, no one factor is itself controlling in the determination of the reasonableness of zoning restrictions. Chicago Title & Trust Co. v. Wilmette, 66 Ill App2d 326, 337, 338, 214 NE2d 336. It is rather the function of the court to apply all of the factors to the particular case in that determination. When, as here, it appears that zoning restrictions have no real, substantial relation to the public health, safety, welfare or morals and the owner has demonstrated hardship as a result of their imposition, the restrictions should not be upheld.

Although the trial court originally indicated that it would not consider any evidence pertaining to the question of the need of the community for the use proposed or recent development in the area, it is clear from the record that evidence on those questions was later admitted and considered by the court. We find no error in the record that is sufficient to reverse the determination of the lower court and it will be accordingly affirmed.

Judgment affirmed.

DAVIS, P. J. and MORAN, J., concur.