JOHN HELLER, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO, Defendant-Appellee.

First District (3rd Division)    No. 77-1448

Opinion filed January 17, 1979.—Modified on denial of rehearing April 18, 1979.

Jerome S. Schain, James Kaplan and Thomas R. Burney, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Philip L. Bronstein, Assistant Corporation Counsel, of counsel), for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

This is an appeal by the plaintiff, John Heller, from a judgment of the circuit court upholding the R-1 zoning classification (single-family

residence use) of property located at 1819-23 West 104th Street in the City of Chicago (the City). The plaintiff, who purchased a portion of this property in 1966 and the balance in 1968, seeks to have the property rezoned R-4 (multifamily residence use), so that he may construct a 32-apartment building. This proposed "U" shaped, three-story, walk-up building, along with a parking lot, would be built upon the plaintiff's two lots. These lots are located toward the center of the block on the south side of West 104th Street in a block bordered on the north by 104th Street, by 105th Street on the south, by South Wood Street on the east, and on the west by Hale Street—a narrow, one-way northbound street which adjoins the Rock Island Railroad tracks. The plaintiff's property, which has a frontage of 100 feet and a depth of 295 feet, is improved with a brick structure, which was converted into two apartments during the World War II housing shortage, and a single-family frame residence.

The scheme of zoning in the block in which the plaintiff's property is located as well as in the block immediately to the south running from West 105th Street to West 107th Street is as follows: Approximately the west 175 feet of each block fronting on the east side of Hale Street are zoned R-4. The balance of each block is zoned for single-family residence use except that the south 82 feet of the portion of the block running from 105th Street to 107th Street directly south of the R-4 zoning are zoned for business use. The R-4 zone commences at the west line of the plaintiff's property.

Except for two 12-apartment buildings west of the plaintiff's lots, a four-flat building at the southwest corner of 104th Street and Wood, the plaintiff's two-apartment structure and several two-flat dwellings along Hale Street, the block between 104th Street and 105th Street consists of single-family dwellings. A single-family home which adjoins the plaintiff's property on the east, and the rear portions of the lots of three single-family homes border the east lot line of the plaintiff's property. The remainder of the block (i.e., that portion which lies immediately south of the plaintiff's land) is improved with single-family structures. The blocks surrounding the subject property also reflect a mixture of multi- and single-family dwellings, with a heavy concentration of multifamily units along Hale Street across from the Rock Island Railroad tracks. This is contrasted with the property located in adjoining blocks bounded by Wood Street on the east, which are almost exclusively zoned for and improved with single-family dwellings.

Although the block to the north of the plaintiff's property is zoned R-4, it currently has several single-family residence uses, and at the north end of that block fronting on West 103rd Street the zoning is B2-2, a classification permitting business uses. There are three single-family

residences on the north side of West 104th Street diagonally across 104th Street from, and slightly to the west of, the plaintiff's property.

The plaintiff contends that the present zoning classification, which dates from 1923, is unreasonable, arbitrary and invalid, and that he should not be precluded from using his property in a more desirable and efficient manner.

The plaintiff's experts testified that his property would approximately double in value if zoned for R-4 use; that the use the plaintiff proposed for his property was its highest and best use; that because of the depth of the plaintiff's property, single-family use constituted an underutilization of the property; and that development of the 32-apartment building the plaintiff proposed would not adversely affect the single-family home which adjoins the plaintiff's property on the east. The plaintiff's city planner and zoning consultant testified on cross-examination that there had been little construction activity in the area for the previous 6 years, and that there had been no trend towards either single-family or multiple-family use for at least 10 years. He ascribed the lack of activity to the well-established character of the neighborhood and to the lack of vacant land. His opinion was that if there was a trend of development in the area it would be for apartment use. He stated that it is desirable to encourage multiple-family development within a few blocks of a railroad station and noted that the Rock Island commuter station at 103rd and Hale Streets was within walking distance of the plaintiff's property, as was a commercial shopping district at the same intersection. He also emphasized the need for multiple-family dwellings in suitable locations in the city.

The plaintiff testified that the rental he received from his property was $70 per month in excess of his monthly mortgage payments. He also stated that as a real estate broker doing business in the area he found there was a need for multiple-family dwellings, particularly for those elderly people who were no longer able to maintain their large, older, single-family homes in the area, but still desired to remain in the area, living in apartments.

The City's experts testified that there has been no significant construction of multiple-family dwellings or zoning changes in the area during the previous 10 years; three single-family residences had been constructed during that time on the plaintiff's block; the highest and best use of the plaintiff's property was for single-family homes in the area; the R-4 zoning along Hale Street between 103rd and 107th Streets served as a buffer between the Rock Island tracks and the area zoned R-1; the apartment building proposed for the plaintiff's property would have a deleterious effect on the home adjoining his property on the east, as well

as on a single-family residence fronting on Wood Street; the single-family homes to the east and south of the plaintiff's property add to its desirability for single-family use; because of the depth of his property, the defendant could develop his property into four single-family building lots with ingress through a cul-de-sac arrangement; and that if it were developed into four single-family residence lots, the property would have a value of $70,000, compared to its present value of $50,000.

The alderman of Chicago's 19th ward objected to a change in zoning, stating that the proposed use would increase traffic and pose a threat to children. The executive director of a community organization voiced objections based on traffic congestion and parking shortages in the area; he felt that a zoning change might set a precedent for other zoning changes permitting apartments to be built where single-family zoning currently exists. And both the owner of the single-family dwelling directly to the east of the plaintiff's property, as well as the owner of a home approximately three doors from his property also objected. The former believed that her sun and air would be blocked by the proposed development, while the latter feared an adverse effect on parking and traffic.

■■ A zoning ordinance is presumed valid, and a party attacking such an ordinance has the burden of overcoming this presumption with clear and convincing evidence that the ordinance, as applied to the property in question (i) is arbitrary and unreasonable, and (ii) has no substantial relation to the public health, safety, morals or welfare. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80, 354 N.E.2d 899; *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428, 312 N.E.2d 625.) In deciding whether a property owner has discharged the heavy burden (*Georgen v. Village of Mount Prospect* (1978), 65 Ill. App. 3d 512, 382 N.E.2d 523; *Siegel v. City of Chicago* (1970), 127 Ill. App. 2d 84, 92, 261 N.E.2d 802) which the presumption of validity imposes upon him when he attacks a zoning ordinance, as well as in weighing the validity of the ordinance under attack, a court should consider the factors set forth in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65.

■■ A paramount consideration among those intended by the court in *La Salle National Bank v. County of Cook* to assist courts in making such a determination is whether the zoning classification under attack is in conformity with surrounding existing uses, and whether the surrounding uses are uniform and established. (*Ryan v. County of Du Page* (1963), 28 Ill. 2d 196, 198, 190 N.E.2d 737.) Here, the evidence shows a diversity of uses in the area. Most of the multi-family uses front on Hale in the R-4 zoning classification, and this classification serves as a buffer between the Rock Island tracks and the R-1 district adjoining the R-4 district on the

east. Extensive single-family development is found to the south and east of the plaintiff's property. The area to the east of the R-4 buffer zone which fronts on Hale Street is uniformly zoned for and largely improved with single-family residences. And as far as 104th Street itself is concerned, between Hale and Wood, there are seven single-family uses on the north and south sides of the street. It is unavoidable that zoning must begin and end somewhere; that two different zoning classifications attach to adjoining properties, which are separated only by their respective lot lines, does not make the more restrictive classification unreasonable. (*Lapkus Builders, Inc. v. City of Chicago* (1964), 30 Ill. 2d 304, 310, 196 N.E.2d 682; *Avenue State Bank v. Village of Oak Park* (1968), 99 Ill. App. 2d 329, 341, 241 N.E.2d 630.) In this case, the plaintiff's west lot line is the west boundary line for a discernible single-family area. That area has been zoned for single-family use for many years, and no zoning changes have occurred there in the previous 10 years. The single-family zoning which the plaintiff's property carries conforms to surrounding existing uses to the east and to the south and the surrounding uses consist for the most part of single-family residences which have been in existence for many years.

■■ The zoning plan for the plaintiff's property and the adjoining area is consistent and well conceived. It provides for multifamily zoning on both the east and west sides of the Rock Island tracks to buffer the single-family home zoning which prevails beyond the buffer area. The buffer zone extends on both sides of the tracks in essentially straight north and south lines from approximately West 107th Street to 104th Street. That the same zoning pattern does not exist in the block between 104th Street and 103rd Street, a factor on which the plaintiff places great reliance, is insignificant. The R-4 district in this block extending north of 104th Street reflects city council judgment to use R-4 zoning to buffer the business area on the south side of West 103rd Street in this block from the R-1 zoning classification in the block south of 104th Street.

■■ The second factor *La Salle National Bank v. County of Cook* instructs us to consider is the extent to which the plaintiff's property value is diminished by the existing zoning. The plaintiff's experts testified that the value of the plaintiff's property would substantially increase were it available for apartment house construction. This differential in value is a usual argument, but not a compelling one, in cases where a less restrictive zoning is sought. (*Elmhurst National Bank v. City of Chicago* (1961), 22 Ill. 2d 396, 403, 176 N.E.2d 771.) The plaintiff acquired his property with knowledge that it was zoned R-1, and the court's observation in *Elmhurst National Bank* is relevant here. After commenting that the plaintiff there purchased the property with full knowledge that it was zoned residential, the court said:

"Although there is no evidence of plaintiff's investment, it is not unreasonable to suppose that the price paid was commensurate with that purpose. Under these circumstances, it can hardly be found that the ordinance has diminished the value of plaintiff's property or is confiscatory." *Elmhurst National Bank*, 22 Ill. 2d 396, 402-03.

■ In any event, we cannot conclude that the value of the plaintiff's property is unreasonably diminished by the current zoning, especially since there is evidence that the plaintiff has permitted his single-family residence to fall into disrepair. On the basis of this evidence, the trial judge could have determined that any diminution in value of the property was attributable to the owner's neglect, rather than to the existing R-1 zoning.

■ Moreover, the City offered evidence showing that it is feasible for the plaintiff to subdivide his property into four single-family residence lots— an action which would substantially increase the value of the property. The plaintiff's response that this proposal was not worthy of serious consideration is supported only by his testimony that such a subdivision would raise the cost of any new homes so much as to make them unmarketable. And this testimony was different from that of the plaintiff's expert witness, a real estate broker and appraiser, who testified that the plaintiff's property would have a higher value if it were developed into four lots with the two existing structures either remaining or razed. He based this opinion on the shortage of homes being offered for sale. Clearly, it was within the circuit court judge's province to decide which of the expert witnesses offered a more reliable opinion. The fact that with limited exceptions the properties to the south and to the east of the plaintiff's on both sides of Wood Street are improved with single-family residences is an indication that this is an economically feasible use in the area.

■ The third consideration set forth in *La Salle National Bank v. County of Cook* is the extent to which the prescribed zoning promotes the health, safety, morals or general welfare of the public. We feel that the residents of the area involved here are entitled to the lower density requirements which directly relate to their health, safety and morals. There is evidence that exposure of the residence directly to the east of the plaintiff's property to sun and air would be adversely affected by R-4 zoning, and also that problems of parking and traffic congestion in the area would be aggravated by the proposed apartment building. And the fear of area residents that the proposed zoning change would erode the single-family residential character of the area was borne out in the record. One of the plaintiff's expert witnesses testified that not only was the plaintiff's property ripe for multifamily development, but that the large area

between 103rd and 106th Streets and Longwood Drive (located to the west of the Rock Island tracks) and Wood Street should be developed for multifamily use. This testimony indicates the danger that a holding in favor of the plaintiff in this case would open the door to further attacks on zoning and in the future threaten the continued existence of enclaves of single-family residences in the area both west and east of Wood Street. Thus, the plaintiff has failed to establish by clear and convincing evidence (see *Stemwedel v. Village of Kenilworth* (1958), 14 Ill. 2d 470, 153 N.E.2d 79) that the zoning classification he seeks to change does not promote the health, safety, morals or general welfare of the public.

■■ The next factor *La Salle National Bank v. County of Cook* recommends for consideration involves balancing the gain to the public in retaining the current zoning with the hardship that would be imposed on the property owner if the proposed change were denied. There has been no demonstrated hardship on the plaintiff except that he cannot realize the huge profit that might attend a rezoning, a consideration which courts almost uniformly have rejected as unimportant. (*Tomasek*, at 182; *Trendel v. County of Cook* (1963), 27 Ill. 2d 155, 161-62, 188 N.E.2d 668.) And while the plaintiff is not precluded from seeking a change in the zoning to which his property was subject when purchased, he is not in as favorable a position in determining whether that zoning is causing him hardship as would be an owner whose property was rezoned after its purchase. *American National Bank & Trust Co. v. City of Chicago* (1964), 30 Ill. 2d 251, 254, 195 N.E.2d 627; *People ex rel. Alco Deree Co. v. City of Chicago* (1954), 2 Ill. 2d 350, 359-60, 118 N.E.2d 20.

On the other hand, as set forth above, the record includes ample testimony from which the trial judge could have concluded that the public welfare is promoted by the existing zoning restrictions. There is sufficient evidence that these restrictions would preclude adverse effects on the property values of adjoining properties, avoid increased parking difficulties and traffic congestion, and eliminate the likelihood that the plaintiff's construction of an apartment building would attract additional zoning changes in the area.

The final inquiry suggested by *La Salle National Bank v. County of Cook* which is relevant here is whether the property is suitable for the purpose for which it is zoned. Here, a portion of the plaintiff's property is being utilized as a single-family residence, and there has been no showing that the structure converted into two apartments during the emergency of a wartime housing shortage could not also be utilized as a single-family residence. The area to the east of the R-4 buffer zone along Hale Street is primarily devoted to single-family use and this shows suitability of the plaintiff's property for that purpose. And while the plaintiff's expert testified that elderly people are seeking apartment accommodations in the

area after selling their single-family homes, the City's expert testified there is a strong demand for single-family residences in the area. If the suitability of property for its zoning use is even debatable, the legislative judgment must be regarded as controlling. (*Trendel*, at 164.) The well-defined and long-established neighborhood of single-family homes in which the plaintiff's property is located is persuasive proof that his property's suitability for that use is not even open to debate.

■■ In fact, that the plaintiff's property has been zoned for single-family use since 1923 is significant. This use was re-examined and reaffirmed by the municipal authorities of the City in the comprehensive amendment to the city ordinance in 1957. Further, the evidence established that there had been no zoning changes in the area for 10 years and that there were few, if any, vacant lots in the vicinity of the plaintiff's property. In view of the length of time the current zoning has existed and the fact that any changes in zoning would also upset existing property uses, a court should tamper with the future of such a long-established community as the one we are dealing with here only with the greatest reluctance. (See *Georgen*, at 524.) Taken most favorably to him, the evidence presented by the plaintiff only shows that there could be a difference of opinion as to the reasonableness of the ordinance. This is not the sort of clear and convincing evidence required to override the legislative judgment of the Chicago city council with respect to the type of zoning appropriate for the plaintiff's property, as well as for the property east and south of the plaintiff's.

■■ Because, then, the plaintiff failed to overcome the zoning ordinance's presumptive validity with clear and convincing evidence, in view of the standards set forth in *La Salle National Bank v. County of Cook*, the judgment declaring the existing zoning valid as applied to the plaintiff's property is affirmed.

Judgment affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.