ABDULLAH MATLOOB, Plaintiff-Appellant, *v.* THE VILLAGE OF CAHOKIA, Defendant-Appellee.

Fifth District   No. 79-481

Opinion filed May 14, 1980.

Sam S. Pessin, of Pessin, Baird & Wells, of Belleville, for appellant.

Robert J. Sprague, of Sprague, Sprague & Ysursa, of Belleville, for appellee.

Mme JUSTICE SPOMER delivered the opinion of the court:

The plaintiff, Abdullah Matloob, is the purchaser under contract and equitable owner of a 23.5-acre tract of land in the village of Cahokia. The property has always been used for agricultural purposes, and is zoned agricultural. The plaintiff petitioned the village zoning and planning commission and the village council for a change in the zoning ordinance to designate his property R-3 (single-family, mobile home, residential) so that he could develop a mobile home park on the premises. The village council denied his request, pursuant to the recommendation of the zoning and planning commission. After the plaintiff had exhausted administrative remedies, he filed a complaint in the circuit court. Following a hearing and the submission of briefs on both sides, the court found that plaintiff "failed to meet his burden of proof challenging the Village of Cahokia's

zoning ordinance to prove by clear and convincing evidence that the ordinance as applied to his property is arbitrary and unreasonable and without substantial relationship to the public health, safety and welfare." Accordingly, the court found the zoning ordinance valid and entered judgment in favor of the village and against the plaintiff. The plaintiff appeals from that judgment.

Plaintiff's lot is a long, narrow trapezoid which fronts on Jerome Lane, an arterial road near State Route 157 in Cahokia. On either side of the lot are similar lots, also zoned agricultural, and under cultivation. Directly across Jerome Lane from plaintiff's lot is an existing mobile home park, consisting of about 90 mobile homes. Apart from this park, the three agricultural lots are surrounded by developments consisting of single-family residences. A few commercial businesses are nearby.

During the pendency of plaintiff's actions for a change in the zoning ordinance, title to the rear portion of plaintiff's property, consisting of 8.865 acres, was taken by the Illinois Department of Transportation and by the Federal Government for the proposed relocation of Interstate Highway 270. Plaintiff submitted detailed plans for the use of the remaining 14.635 acres, involving an enclosed, "first-class" mobile home park, with room for 94 mobile homes, each on a 5,000-square-foot lot.

A review of the administrative meetings reveals that members of the zoning and planning commission felt that sufficient provision for mobile homes had already been made in the community. Two areas had been zoned R-3: the mobile home park on Jerome Lane and a mobile home subdivision at the other end of the village. Members of the commission also expressed concern about population density, believing that the additional burden placed upon the school system by the mobile home residents would not be sufficiently borne by their real estate taxes. Also discussed was the possibility that areas near Highway 157 would be rezoned for commercial use within the near future. The effect of such rezoning on plaintiff's land was not discussed. Subsequently, the plaintiff's rezoning request was denied by the village board, and his resulting request for an injunction and writ of *mandamus* in the circuit court was also denied.

On appeal, the plaintiff challenges the court's judgment and the zoning ordinance of the village of Cahokia as it affects his property.

■■ Well-established principles govern our review of the court's order and the administrative rulings which preceded it. A zoning ordinance is presumed valid, and a party attacking such an ordinance has the burden of overcoming this presumption with clear and convincing evidence that the ordinance, as applied to the property in question, is arbitrary and unreasonable, and has no substantial relation to the public health, safety, morals or welfare. (*Heller v. City of Chicago* (1979), 69 Ill. App. 3d 815,

387 N.E.2d 745.) The factors to be considered in making such determination include (1) the existing uses and zoning of nearby property; (2) the reduction in property value resulting from the zoning restriction complained of; (3) the extent to which the lessened value of the site promotes the general health, safety and welfare of the public; (4) the relative gain to the public as opposed to the hardship to the owner; (5) the suitability of the property for its zoned purpose; and (6) the length of time the property has remained vacant, as zoned, in the context of other land development in the area. (*La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill. App. 3d 1040, 278 N.E.2d 114.) Added to these factors are intangible factors, such as the care with which the legislative body planned its land-use development and the community need for the use proposed by the property owner. (*Locker v. City of McHenry* (1967), 89 Ill. App. 2d 457, 231 N.E.2d 685.) In considering all these factors, primary importance is to be given to whether the land in question is zoned in conformity with surrounding existing uses. *Welch v. City of Evanston* (1978), 65 Ill. App. 3d 249, 382 N.E.2d 615.

The courts are strictly limited in their review of zoning cases, since they must carefully avoid impinging upon the municipality's power to determine zoning classifications. (*Treadway v. City of Rockford* (1962), 24 Ill. 2d 488, 182 N.E.2d 219: *First National Bank v. Village of Morton Grove* (1973), 12 Ill. App. 3d 589, 299 N.E.2d 570.) Thus, the plaintiff must establish that the zoning ordinance is arbitrary and unreasonable, not merely that the property could be zoned under a different classification or that the court would classify it differently. (*Fairfield Savings & Loan Association v. City of Chicago* (1976), 45 Ill. App. 3d 266, 359 N.E.2d 1040.) Similarly, it is not enough for plaintiff to show hardship, or that the desired use would not substantially impair public health, safety or welfare. *Fairfield Savings & Loan Association; Gregory v. City of Wheaton* (1961), 23 Ill. 2d 402, 178 N.E.2d 358.

Review, by an appellate court, of a lower-court judgment is similarly constrained. Where the testimony before the lower court in a bench trial is contradictory, the weight to be given testimony is a matter for the trial court, and the court's judgment will not be disturbed unless manifestly against the weight of the evidence. (*First National Bank v. Village of Morton Grove* (1973), 12 Ill. App. 3d 589, 299 N.E.2d 570.) A finding, whether administrative or judicial, is not against the manifest weight of the evidence unless, from the record, it appears that the opposite conclusion is clearly evident. *Goslin v. Zoning Board of Appeals* (1976), 40 Ill. App. 3d 40, 42, 351 N.E.2d 299, 301.

■■ When the plaintiff's arguments in the instant case are considered in terms of these restraints on review, the arguments fail to establish that the denial of his zoning change request was arbitrary and unreasonable, or that

the ordinance has no substantial relation to the public health, safety, or welfare. His main argument is that his property would be far more valuable as a mobile home park. While that may be true, where a landowner's only demonstrated hardship is that he cannot realize the profit that might attend a rezoning, that hardship has been almost uniformly rejected as unimportant. (*Heller v. City of Chicago* (1979), 69 Ill. App. 3d 815, 387 N.E.2d 745.) Further decreasing the importance of this argument is the fact that the plaintiff purchased the property with knowledge of the pre-existing zoning classification, which has a bearing on his claim. *Eckhardt v. City of Des Plaines* (1958), 13 Ill. 2d 562, 150 N.E.2d 621.

█■ The plaintiff's second argument is that a mobile home park has been permitted directly across Jerome Lane from his property. However, this argument is not particularly convincing, since it is unavoidable that zoning must begin and end somewhere. Thus, the fact that two different zoning classifications attach to adjoining properties, even where a road does not intervene, does not make the more restrictive classification unreasonable. (*Heller v. City of Chicago* (1979), 69 Ill. App. 3d 815, 387 N.E.2d 745.) Where, as here, an arterial road separates the properties, the roadway may constitute a proper dividing line between zoning classifications. (*Mundelein Estates, Inc. v. Village of Mundelein* (1951), 409 Ill. 291, 99 N.E.2d 144; *Krom v. City of Elmhurst* (1956), 8 Ill. 2d 104, 133 N.E.2d 1.) In addition, the village has a proper interest in maintaining a straight line of demarcation between permitted uses. (*Kuiken v. County of Cook* (1961), 23 Ill. 2d 388, 178 N.E.2d 338.) Furthermore, while the property across Jerome Lane maintained a mobile home park, the property on either side directly abutting the plaintiff's property was zoned agricultural. When this primary factor is considered (*Welch v. City of Evanston* (1978), 65 Ill. App. 3d 249, 382 N.E.2d 615), it weighs heavily against the plaintiff's requested zoning change.

█■ In addition, plaintiff's arguments are offset by the positive arguments of the village for retaining the agricultural zoning area. The chief argument of the planning and zoning commission was that the village had already made some provision for mobile homes, and that the added burden placed by another mobile home park on village services would not be met by the added tax revenues. Where necessary for health, safety and welfare, a municipality may reasonably restrict increases in population density. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 312 N.E.2d 625.) While this factor alone may not be conclusive, it tends to show that the zoning ordinance is not arbitrary and unreasonable.

█■ Moreover, intangible factors, including the community's care in planning and the need for mobile homes in the community (*Locker v.*

*City of McHenry* (1967), 89 Ill. App. 2d 457, 231 N.E.2d 685), are relevant here. The plaintiff's lot is in the center of an area of undeveloped land, unimproved and used for cultivation. The rear two-fifths of the property is soon to be used for an interstate highway. There can be no question that the nature of the area will change quickly when the interstate is built, and it seems clear that the village must carefully re-evaluate the zoning of the area, including plaintiff's lot, in the near future. It is equally apparent that, should the plaintiff develop a mobile home park on his property, the nature of possible uses of the adjoining agricultural lots on either side would be severely limited. Given the changing circumstances and the uncertain nature of the future use of the area surrounding plaintiff's property, the public has a significant interest in having all three agricultural tracts zoned the same. This would permit the flexibility necessary for careful planning of zoning changes in the area.

Since the area around it seems to be developing, agriculture may constitute underutilization of plaintiff's land. However, the fact that plaintiff's lot is underutilized in its present use does not require the adoption of the opposite zoning extreme, mobile homes, which the plaintiff advances. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 429, 312 N.E.2d 625, 633.) Because of the nature of the situation, in fact, virtually any of the spectrum of zoning classifications could be applied to the plaintiff's property.

■■ It is apparent that room exists for a difference of opinion in this case. As the plaintiff notes, there is a need for reasonable-cost housing, which all municipalities have a responsibility to meet. However, the village council's denial of a zoning change for plaintiff's mobile home park does not disclose a systematic refusal to meet that need. Rather, when all the facts are considered, the opinions of both the plaintiff and the village of Cahokia are reasonable and justifiable, and therefore it cannot be said that plaintiff has proved his case by clear and convincing evidence as required. Under such circumstances, the legislative determination of the city council, and the circuit court judgment affirming that determination, are conclusive. (*Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239, 353 N.E.2d 61; *Krom v. City of Elmhurst* (1956), 8 Ill. 2d 104, 133 N.E.2d 1.) We therefore find no need in this case to impinge upon the municipality's power to determine zoning classifications.

On the basis of this holding, the judgment of the trial court affirming the denial of plaintiff's request by the Cahokia village council is affirmed.

Affirmed.

KARNS and HARRISON, JJ., concur.