BANK OF ELK GROVE, as Trustee, Plaintiff-Appellant, v. THE CITY OF JOLIET, Defendant-Appellee.

Third District   No. 3—87—0123

Opinion filed March 31, 1988.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Thomas R. Wilson, of counsel), for appellant.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago (Nicholas E. Sakellariou, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

This zoning case presents one major issue for decision. The main question is whether the judgment of the circuit court is against the manifest weight of the evidence presented at trial. In answering that question, this court must examine whether the applicable zoning ordinance bears any substantial relation to the health, comfort, safety, morals, and general welfare, as applied to appellant's property. In addition, this court may examine whether the proposed development and use of the property are appropriate.

This case involves 65 acres of a larger 75-acre tract of land in Joliet. Rypkema, Kimpel, and Plase purchased the 75 acres in 1978. Title to the land was taken in the name of appellant, as trustee, by several deeds between 1978 and 1980. Prior to purchase in 1978, the property was zoned for agricultural use outside the corporate limits of the City of Joliet (City). In June 1978, at appellant's request, Joliet annexed the property and zoned it R-2, single family residen-

tial. The R-2 classification allows construction of single-family houses on residential lots of 7,500 square feet, as well as several compatible uses.

The undeveloped tract is surrounded by various uses. A 316-foot Commonwealth Edison right-of-way borders the property on the east, which contains three tall power line towers. Across the right-of-way are a day care nursery, two two-story office buildings, 25 2½-story, 50-unit apartment buildings, and a junior high school. The northern border of the land is Ingalls Avenue. North of Ingalls Avenue is the Westfield subdivision, a single-family residential development, built in the late 1950's and early 1960's, with houses valued between $65,000 and $85,000. Another single-family residential development, Bridal Wreath Acres, lies west of the tract. The prefabricated homes, constructed between 1954 and 1956, have values ranging from $40,000 and $60,000. Black Road, a four-lane arterial street, borders the tract to the south. Beyond the road are Black Road Acres, a single-family residential development, with houses valued between $52,000 and $65,000, and Bevin Acres, a single-family subdivision with values of $65,000 to $80,000. Homes in these subdivisions were constructed from the mid-1950's through the early 1960's. An elementary school is adjacent to the northwest corner of the property.

Appellant originally wanted to subdivide and sell the tract as a single-family residential area. In 1980, the City of Joliet approved a subdivision plat with 280 lots. Attempts to market the land as a subdivision through 1982 were unsuccessful; the early 1980's was a bad period for single-family development in Joliet due to high unemployment and high interest rates. Appellant next tried to sell the property to the Joliet Park Board for use as a golf course, but the plan failed due to the Board's lack of finances. Appellant also submitted a proposal to the City of Joliet to develop the tract as multifamily residential with a golf course, but the Joliet plan commission rejected the proposal. In 1984, appellant unsuccessfully attempted to sell the entire parcel by placing a four-foot by four-foot sign on the tract. Appellant next decided on a congregate elderly housing scheme.

In 1984, appellant contracted to sell 65 acres of the property to U.S. Care Corp., subject to rezoning. The congregate housing proposal included: four 100-unit, five-story residential buildings; a 50-bed, single-story personal health-care facility; a single-story center for dining, recreation, athletics, and administrative offices. Before the project may be built, the City of Joliet must approve a planned unit development for the 65 acres, rezone nine of those acres as the housing classification RB, and grant a special use permit to allow the

health-care facilities. The density of the residential units falls within standards of the existing R-2 classification. Appellant submitted applications for the needed actions in early 1984, with a preliminary planned unit development plan. The City's planners and its plan commission recommended approval; however, the Joliet city council denied the application. Appellant submitted a final planned unit development plan in 1986. The planning staff again recommended approval of the project, but the plan commission recommended denial of the application, as did the city council.

Appellant challenged in circuit court the validity of the Joliet zoning ordinance as applied to the 65 acres after the Joliet city council denial of the planned unit development and rezoning proposal. After hearing the evidence at trial, the court rejected the challenge. Appellant next appealed the circuit court decision to this court.

Zoning is primarily a legislative function. Interfering with legislative actions of a municipal body is not the province or duty of a court, unless the action is shown to be arbitrary, capricious, or unrelated to the public health, safety, or morals. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) Zoning ordinances carry a presumption of validity. A party attacking an ordinance bears the burden of proving by clear and convincing evidence that the application of the ordinance to his property is arbitrary or unreasonable and is without substantial relation to the public health, safety, morals or welfare. *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 469 N.E.2d 183.

The circuit judge based his decision regarding the challenged zoning ordinance on the standards enumerated in *La Salle National Bank* and in *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406, which help in determining whether a challenger of an ordinance has met his burden of proof. The six *La Salle National Bank* factors include: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals, and general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. The additional factors from *Sinclair Pipe Line* are: (1) the community need for the proposed use; and (2) the care with which the community has

undertaken to plan its land use development. After examining the evidence relating to the above eight factors, the circuit judge found that the City of Joliet had a legitimate interest in preserving the residential character of the neighborhood containing the 65-acre parcel. The trial court held that the ordinance bears a reasonable relationship to the general welfare of the community and that the appellant failed to show that the ordinance was arbitrary and capricious or unreasonable.

An appellate court cannot overturn a trial court's findings of fact unless the findings are against the manifest weight of the evidence. (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302.) The appellant must present evidence which is strong enough to completely overcome the evidence and any presumptions in the appellee's favor for a court to find that a judgment is against the manifest weight of the evidence. (*Ruggio v. Ditkowsky* (1986), 147 Ill. App. 3d 638, 498 N.E.2d 747.) An appellate court should not reverse a trial court simply because the appellate court might have reached a different conclusion based on conflicting evidence presented at trial. (*Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 481 N.E.2d 712.) Our focus then is to examine the evidence to determine whether the opinion of the circuit judge is against the manifest weight of the evidence.

At trial, nine witnesses, including seven experts, for the appellant and two experts for the appellee presented the evidence relating to the *La Salle National Bank* and *Sinclair Pipe Line* factors. The testimony of the two sets of witnesses conflicted. The mere existence of differing opinions among expert witnesses does not require findings that the reasonableness of an ordinance is debatable and that the ordinance is valid. (*Myers v. City of Elmhurst* (1958), 12 Ill. 2d 537, 147 N.E.2d 300.) However, when the facts and circumstances of a case indicate that room exists for a difference of opinion about the reasonableness of a zoning ordinance, the legislative judgment prevails. *Exchange National Bank v. County of Cook* (1962), 25 Ill. 2d 434, 185 N.E.2d 250.

The witnesses for both appellant and the City of Joliet presented much evidence about the existing uses and zoning of property near the 65-acre site, as described above. Most of the single-family residential land is zoned R-2. The land uses and zoning classifications east of the power lines are more intensive. Zoning must have some beginning and end; a lot-line may serve as a zoning boundary. (*Heller v. City of Chicago* (1979), 69 Ill. App. 3d 815, 387 N.E.2d 745.) The circuit judge found that the 65-acre plot takes its character from the

surrounding residential uses, with the Commonwealth Edison right-of-way serving as a proper zoning boundary. The City of Joliet has taken care to preserve the single-family residential character of the area. Testimony of the City's witnesses that the scale of the project would impact negatively on the aesthetics of the area and cause erosion of existing zoning was reasonable and persuasive. Appellant's arguments that the proposed development would not change the character of the neighborhood were not strong enough to completely overcome the City's evidence or the findings of the circuit judge.

█ Witnesses for each interest also presented evidence about the extent to which property values are diminished by the Joliet zoning ordinance. Testimony for appellant suggested that the reduction in the value of the 65 acres was great. However, the fact a party suffers a reduction in value or a substantial loss due to a zoning ordinance is not decisive in determining the validity of an ordinance; the court must consider the loss to appellant in relation to the public welfare. (*La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 388 N.E.2d 388.) The circuit judge was properly not swayed solely by appellant's arguments concerning reduction in value.

The extent to which the destruction of appellant's property values promotes the health, safety, morals, or general welfare of the public, and the relative gain to the public as compared to the hardship imposed on appellant, are related points. The circuit judge found that the Joliet ordinance protects the health and safety of the general public by maintaining the single-family residential character of the area. Appellant presented some evidence that the proposed development would not harm the surrounding area. One argument was that the congregate elderly housing project would have less traffic impact than single-family development of the 65 acres. Again, the evidence was not so compelling that it overcomes the arguments of the City that the project would harm the aesthetics of the area and promote erosion of existing zoning restrictions.

█ Some evidence related to the suitability of the 65 acres for the zoned use. Appellant's witnesses testified that the highest and best use of the site would be the proposed development. The City of Joliet presented evidence that the highest and best use would be as currently zoned. The land is physically suited for either type of use. The circuit judge was influenced by the failure of appellant to make a great effort to market the land as zoned. The period when appellant made attempts to sell the land was a slow time for the real estate market in Joliet and later sales efforts were limited to posting a four-foot by four-foot sign on the property. The fact that appellant

originally asked for the R-2 designation also diminished the hardship of the existing zoning argument in the opinion of the circuit judge. Appellant's evidence does not overcome these problems.

The length of time the 65-acre parcel had been vacant as zoned considered in the context of land development in the area near the site also produced testimony from each party. One witness for appellant admitted that little development has occurred recently in the area. That fact, coupled with the points about the sales efforts and the rezoning discussed above, indicates that this factor is also not in appellant's favor.

Appellant and the City provided conflicting evidence about the community need for the congregate elderly housing. Appellant relied on expert testimony and a feasibility study of the proposed congregate elderly housing development. The feasibility study indicated that Joliet had market potential for a 200-unit retirement facility but that a development of that size would have relatively high risk. Appellant argued that the 400-unit proposal was also feasible based on other studies but did not present any evidence about the circumstances of that study. The City also used expert testimony about the need for the project in Joliet. The City's experts discounted many of appellant's findings in arguing that there is no need for the proposed development. Appellant's evidence is not so compelling that it overcomes the findings of the circuit judge.

The care with which Joliet has undertaken to plan its land use development is one area which does not favor the City. Joliet has a comprehensive plan from 1959; the City rejected a 1978 update. The Joliet city council has allowed some exceptions to the planned uses in developments east of the Commonwealth Edison right-of-way. Because the comprehensive plan of Joliet is nearly 30 years old and the City has allowed some exceptions to the plan, this court cannot say that Joliet has taken great care with its land use planning. The City's planning would be more vital and persuasive if it were more current. This point alone, however, is not enough to overcome the findings of the circuit judge.

No one factor is controlling when deciding the validity of a zoning ordinance. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) The arguments presented above must be taken together. In this case, the evidence indicates that room exists for a difference of opinion about the reasonableness of the zoning classification. Thus, the opinion of the circuit judge is not against the manifest weight of the evidence. For all of the foregoing reasons, the decision of the trial court is affirmed.

Finally, the City of Joliet filed a motion for leave to correct statements of fact made during oral argument. That motion is granted.

Affirmed.

HEIPLE and STOUDER, JJ., concur.