No. 2—09—0986
Opinion filed May 12, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* RUFUS T., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| | ) | |
| | ) | No. 98—JD—166 |
| | ) | |
| | ) | Honorable |
| (The People of the State of Illinois, Petitioner- | ) | K. Patrick Yarbrough, |
| Appellee, v. Rufus T., Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Birkett concurred in the judgment and opinion.

**OPINION**

On October 19, 1999, the respondent, Rufus T., was adjudicated a juvenile delinquent based on an admission of attempted aggravated criminal sexual assault of a child under the age of nine (720 ILCS 5/8—4(a), 12—14(b)(i) (West 1998)). The respondent was required to register as a sex offender. On July 2, 2008, the respondent filed a *pro se* petition for removal from the sex offender registry. On August 31, 2009, the trial court denied the petition. The respondent appeals from that order. We affirm.

On September 27, 1999, the State filed a delinquency petition charging the respondent, then age 15, with attempted aggravated criminal sexual assault of a child under the age of 9. On October 19, 1999, the respondent admitted the charge. On that same day, the respondent was adjudicated delinquent, made a ward of the court, and committed to the Juvenile Department of Corrections

(JDOC). The respondent was required to register as a sex offender pursuant to the Sex Offender Registration Act (Act) (730 ILCS 150/1 *et seq.* (West 2000)). See Pub. Act 91—48 (eff. July 1, 1999) (amending 730 ILCS 150/2 (West 1998)); see also *In re J.W.*, 204 Ill. 2d 50, 66 (2003) (holding that "juvenile sex offenders" fall within the purview of section 3 of the Act and are required to register).

On July 2, 2008, the respondent filed a *pro se* petition, pursuant to section 3—5(c) of the Act (730 ILCS 150/3—5(c) (West 2008)), to terminate the term during which he must register as a sex offender. After finding the respondent indigent, the trial court appointed a public defender to represent the respondent. On October 6, 2008, defense counsel requested 10 days to file an updated petition. She also told the court that she believed section 3—5(e) of the Act (730 ILCS 150/3—5(e) (West 2008)) required a current risk assessment to be provided to the trial court and that she would consult her supervisors to determine if there were any financial provisions available to the respondent for such an assessment.

On December 22, 2008, the respondent filed an amended petition alleging that he was 13 years old at the time of the offense, he had been registered as a sex offender for more than five years, had completed sex offender counseling, had no other history of delinquency, and had demonstrated that he was a responsible member of society. For those reasons, the respondent alleged that he posed no threat to the community and requested that he be removed from the sex offender registration list.

On January 5, 2009, defense counsel again addressed the risk assessment. Specifically, defense counsel informed the trial court that, due to budget constraints, the public defender's office could not pay for a risk assessment. Additionally, she had been informed by the chief judge of the Seventeenth Judicial Circuit that neither the court nor the county would pay for such an evaluation.

Defense counsel opined that the statute did not have provisions for paying for a risk assessment for an indigent. The trial court granted defense counsel's request for additional time for the respondent and his mother to decide whether they could pay for a risk assessment.

On August 19, 2009, a hearing was held on the petition. The respondent did not present a risk assessment. The respondent testified that he was 25 years old and lived with his mother in Rockford. He acknowledged that, when he was 14 or 15 years old, he pled guilty to one count of aggravated criminal sexual assault and was declared a delinquent minor. The victim was a family friend who was about three years old. He was 15 years old when he was committed to the JDOC. While incarcerated, he completed sex offender treatment programs provided by juvenile facilities in Harrisburg and Kewanee. He participated in the treatment programs for 2½ years.

The respondent further testified that he was released on parole when he was 18 years old. However, he violated his parole by missing one or two days of school and was returned to the JDOC. While there, he completed another sex offender program and an anger management program. He was released sometime thereafter but again returned to the JDOC due to another parole violation. He was finally released from the JDOC in October 2004, when he turned 21 years old, and went to live with his mother. Prior to his final release, he was required to register as a sex offender. He had one deceased child and a daughter who was 10 months old. He had been divorced for about one month. He was trying to go back to school to work on a GED. He believed that his status as a sex offender was impeding his ability to find a job. He had to support his daughter and believed that his chances of finding employment would improve if he were removed from the sex offender registry.

On cross-examination, the respondent acknowledged that he had mental health issues and had sought treatment in 2008. He was taking medication for depression and to help him sleep. He

could not afford to seek therapy or counseling. He acknowledged that no one had ever told him he was being refused employment because he was a registered sex offender. The respondent testified that a friend of his had checked the sex offender registry and found the respondent's name on it. The respondent acknowledged that he had been convicted of resisting arrest in 2003, received conditional discharge for possession of cannabis in 2004, and received a ticket for possession of alcohol in a public place in 2006.

The respondent's mother, Joann T., testified that the respondent lived with her and that he did not cause any problems. She believed the sex offender registration was impeding the respondent's ability to get an education and find a job. On cross-examination, she acknowledged that she was just assuming that the sex offender registration was causing the respondent problems. She acknowledged that the juvenile sex offender registry was confidential but stated that people have ways of "finding out these things." She described one of the respondent's arrests where the arresting officer stated very loudly in front of neighbors that the respondent was a juvenile sex offender.

Assistant State's Attorney Angela Wartowski testified for the State that she checked the statewide and nationwide sex offender registry websites and that the respondent's name did not appear on those sites. Rockford police officer Di Ann Krigbaum testified that on September 9, 1999, she interviewed the respondent's three-year-old victim. Using anatomically correct dolls, the victim indicated that the respondent had put his penis into her vagina. Officer Krigbaum also interviewed the respondent, who admitted to committing the conduct on one occasion.

On August 31, 2009, the trial court denied the respondent's petition. The trial court determined that, based on the information presented, it could not make a finding that the respondent

posed no risk to the community. Following the denial of his motion to reconsider, the respondent filed a timely notice of appeal.

On appeal, the respondent argues that the requirement set forth in section 3—5(e)(1) of the Act, that the trial court "shall" consider "a risk assessment performed by an evaluator approved by the Sex Offender Management Board" when ruling on a petition for termination of sex offender registration, is mandatory rather than directory. Therefore, the respondent argues that the trial court erred when it failed to order the State to pay for a risk assessment, due to his indigence, and denied his petition without considering a risk assessment.

Under the Act, "sex offenders" must follow the registration requirements set forth in section 3 of the Act (730 ILCS 150/3 (West 2008)). Section 3—5 provides an exception to the requirements for adjudicated juvenile delinquents who qualify as sex offenders and allows them to petition for removal from the registry after two or five years, depending on the severity of the crime. 730 ILCS 150/3—5 (West 2008). Section 3—5(d) provides that, following a hearing, the trial court may terminate registration if the court finds that the respondent poses "no risk to the community by a preponderance of the evidence based upon the factors set forth in subsection (e)." 730 ILCS 150/3—5(d) (West 2008). Subsection (e) provides as follows:

"(e) To determine whether a registrant poses a risk to the community as required by subsection (d), the court shall consider the following factors:

(1) a risk assessment performed by an evaluator approved by the Sex Offender Management Board;

(2) the sex offender history of the adjudicated juvenile delinquent;

(3) evidence of the adjudicated juvenile delinquent's rehabilitation;

(4) the age of the adjudicated juvenile delinquent at the time of the offense;

(5) information related to the adjudicated juvenile delinquent's mental, physical, educational, and social history;

(6) victim impact statements; and

(7) any other factors deemed relevant by the court." 730 ILCS 150/3—5(e) (West 2008).

Section 3—5(f) further provides that, at a termination hearing, "a registrant shall be represented by counsel and may present a risk assessment conducted by an evaluator who is a licensed psychiatrist, psychologist, or other mental health professional, and who has demonstrated clinical experience in juvenile sex offender treatment." 730 ILCS 150/3—5(f) (West 2008).

Whether a statutory command is mandatory or directory is a question of statutory construction that we review *de novo*. *People v. Robinson*, 217 Ill. 2d 43, 54 (2005). The statutory language is the best evidence of legislative intent. *Id.* It is presumed that language issuing a procedural command to a government official indicates an intent that the statute is directory. *People v. Delvillar*, 235 Ill. 2d 507, 517 (2009). This presumption can be overcome by either of two conditions. *Id.* "A provision is mandatory under this dichotomy when there is negative language prohibiting further action in the case of noncompliance or when the right the provision is designed to protect would generally be injured under a directory reading." *Id.* The use of the word "shall" is often determinative of whether a statute is mandatory as opposed to permissive, but "shall" has never been considered determinative of whether a statute is mandatory or directory. *Robinson*, 217 Ill. 2d at 53-54. Failure to comply with a mandatory statutory requirement will have the effect of invalidating the governmental action to which the procedural requirement relates. *Id.* at 51-52.

In the present case, the parties agree that section 3—5(e) of the Act is a procedural command to a government official. Accordingly, it is mandatory if there is negative language prohibiting further action in the case of noncompliance or if the right it is designed to protect would generally be injured under a directory reading. *Delvillar*, 235 Ill. 2d at 517. The parties also agree that section 3—5 of the Act does not contain any negative language indicating that the trial court's failure to consider a risk assessment invalidates its ruling on a petition for removal from the sex offender registry. The parties disagree as to whether construing the statute as directory is inconsistent with its intended purpose.

The respondent argues that to construe subsection (e) as directory, rather than mandatory, would thwart its purpose. The respondent argues that the purpose of the factors set forth in subsection (e) is to ensure that the trial court's determination is fully informed. The respondent notes that, during legislative debates, those who argued in favor of the bill believed that it protected a juvenile who made a mistake and no longer posed a threat to society from having to spend his adult life registered as a sex offender. Those who argued against the bill believed that the early release of registrants posed a threat to community safety. Accordingly, the respondent argues that construing the risk assessment requirement in subsection (e) as mandatory is consistent with the legislative intent because it ensures that a trial court makes a fully informed decision and that the interests of the respondent and community safety are fairly balanced and protected.

The State argues that the sole purpose of section 3—5 of the Act is to protect the rights of adjudicated juvenile sex offenders who do not pose a danger to society as adults. The State further argues that these rights will not be injured by construing the subject provision as directory, because

the list of factors that the trial court shall consider is sufficiently extensive such that the lack of a risk assessment will not automatically result in the deprivation of a juvenile sex offender's rights.

The statute at issue was introduced as Senate Bill 121 and enacted as Public Act 95—658, effective October 11, 2007. Our review of the legislative history shows that the statute was intended to protect the rights of juveniles who committed less serious sex offenses and prevent them from having to spend their adult lives registered as sex offenders. Senator Raoul, the sponsor of the bill in the Senate, noted that it was prompted by two newspaper articles that "recognized that we were a bit overzealous when we passed a law requiring juvenile sex offenders, no matter the nature of the offense, to register as adult sex offenders when they turn the age of majority." 95th Ill. Gen. Assem., Senate Proceedings, May 1, 2007, at 14 (statements of Senator Raoul). He also noted that it was prompted by case law. Senator Raoul noted that former Illinois Supreme Court Chief Justice McMorrow had stated:

> "I *** invite the legislature to reconsider the wisdom of imposing [lifetime registration] on juveniles, particularly juveniles under the age of 13. The public safety concerns which animate the [sex offender] registration and notification laws should be harmonized with our traditional understanding of the need to protect and rehabilitate the young citizens of this state." *In re J.W.*, 204 Ill. 2d at 84 (McMorrow, C.J., specially concurring, joined by Freeman, J.).

See 95th Ill. Gen. Assem., Senate Proceedings, May 1, 2007, at 15-16 (statements of Senator Raoul). As the foregoing demonstrates, the statute was intended to protect the rights of juvenile delinquents, who have a greater likelihood of rehabilitation, by allowing them the opportunity to petition the court to remove them from the sex offender registry.

Having determined the right that the statute intended to protect, we must next determine whether that right would be injured by a directory reading of the statute. See *Delvillar*, 235 Ill. 2d at 518. We cannot say that the right the legislature intended to protect generally would be injured by a directory reading. Section 3—5(e) of the Act lists a number of factors that a trial court shall consider when ruling on a petition for removal from the sex offender registry. The section also gives the trial court discretion to consider "any other factors deemed relevant by the court." 730 ILCS 150/3—5(e)(7) (West 2008). This list is sufficiently extensive and gives enough discretion to the trial court that the lack of a section 3—5(e)(1) risk assessment will not automatically result in the deprivation of a juvenile sex offender's rights.

Moreover, it is not difficult to imagine a situation where the trial court can consider the nature of a juvenile delinquent's sex offense, the juvenile's age at the time of the offense, and evidence of the juvenile's rehabilitation and education, and determine that the juvenile no longer poses a risk to the community. Commonly voiced concerns during legislative hearings on the statute were over "the Romeo and Juliet scenario involving a sixteen- and a fourteen-year-old," and over the juvenile who committed a less serious offense, had no other involvement in the criminal justice system, had been a "model probationer," and had complied with all his services. See 95th Ill. Gen. Assem., Senate Proceedings, May 1, 2007, at 14-15, 25 (statements of Senator Raoul); see also 95th Ill. Gen. Assem., House Proceedings, May 29, 2007, at 21-22 (statements of Representatives Lindner, Brosnahan, and Sacia) (addressing the Romeo and Juliet cases). In these types of cases, we cannot say that the lack of a risk assessment would generally harm the juvenile. As neither condition set forth in *Delvillar*, 235 Ill. 2d at 517, overcomes the presumption of a directory reading, we conclude that the trial court's duty to consider the factors set forth in section 3—5(e) is directory.

This determination is further supported by the plain language of the statute. When interpreting the plain language of a statute, we presume that the legislature did not intend absurd, inconvenient, or unjust results. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 12 (2009). If we were to find the statute mandatory, then it would similarly be reversible error, for example, if neither party presented evidence of the respondent's rehabilitation (730 ILCS 150/3—5(e)(3) (West 2008)) or victim impact statements (730 ILCS 150/3—5(e)(6) (West 2008)). The legislature could not have intended to invalidate a trial court's determination solely because the parties failed to present certain evidence. For example, a victim might not make a victim impact statement, and thus there might not be any victim impact statements for the trial court to consider. It would be absurd to say that, in the absence of a victim impact statement, the trial court could not validly determine, from the other factors and any other relevant evidence, whether a registrant poses a risk to the community.

The respondent argues that the plain language of the statute indicates that consideration of a risk assessment is mandatory. The respondent notes that the legislature used the word "shall" in subsection (e) to require the court to consider a risk assessment by an evaluator qualified by the Sex Offender Management Board but used the word "may" in subsection (f) to refer to a second risk assessment that the respondent is allowed to present. The respondent asserts that the use of the two different terms indicates that the legislature intended for consideration of a risk assessment under subsection (e) to be mandatory. However, as noted above, the use of the word "shall" has never been considered determinative of whether a statute is mandatory or directory. *Robinson*, 217 Ill. 2d at 53-54. Moreover, the mere fact that subsection (f) allows a respondent to present his own risk assessment, conducted by any experienced mental health professional, does not mean that, if neither

party presents a subsection (e) risk assessment, the trial court's judgment will be reversible or invalid.

Finally, in arguing that the statute is mandatory, the respondent also argues that the State should have paid for a risk assessment. In response, the State asserts that payment for risk assessments should be similar to payment for a defendant's expert witness. Relying on *People v. Lawson*, 163 Ill. 2d 187, 220-21 (1994), the State notes that an indigent defendant has a right to present expert witnesses in his defense and that the State will provide payment for the experts if the defendant has proven their necessity. Whether the defendant has proven such necessity is a matter within the trial court's discretion. *Id.* at 230. The State argues that, based on this principle, the State should provide payment for a risk assessment only if an indigent respondent proves that it is necessary, and such a determination should be within the discretion of the trial court.

The *Lawson* case involved an adult criminal proceeding. We recognize that, while juvenile proceedings are not criminal, certain procedures from the adult criminal system can apply. *In re S.B.*, No. 3—09—0095, slip op. at 3 (Ill. App. Mar. 7, 2011). For example, section 5—101(3) of the Juvenile Court Act of 1987 (705 ILCS 405/5—101(3) (West 2008)) provides that, "[i]n all procedures under this Article, minors shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors." Accordingly, the State's argument might have merit. Nonetheless, we need not resolve the issue because it is not properly before us on appeal. In the trial court, the respondent did not file a motion requesting that the State provide payment for a risk assessment. Accordingly, the trial court neither granted nor denied such a request and there is no decision to review on appeal.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.