NOTICE
Decision filed 11/16/17. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2017 IL App (5th) 170133

NO. 5-17-0133

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| *In re* T.J.D., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Williamson County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10-JD-26 |
| | ) | |
| T.J.D., | ) | Honorable |
| | ) | Jeffrey A. Goffinet, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Barberis and Overstreet concurred in the judgment and opinion.

## OPINION

¶ 1    Respondent, T.J.D., filed a petition to terminate his sexual offender registration pursuant to section 3-5 of the Sex Offender Registration Act (Act). 730 ILCS 150/3-5 (West 2014). The trial court denied the petition, and respondent appealed. On appeal, respondent argues that the trial court's interpretation of section 3-5(d) of the Act—which permits a court to terminate the sex offender registration of an adjudicated juvenile delinquent if he shows, by a preponderance of the evidence, that he poses no risk to the community—creates an impossible burden and is contrary to the legislature's intent. 730

1

ILCS 150/3-5(d) (West 2014). Respondent argues the trial court's decision should be reversed and remanded with directions regarding the proper interpretation of this statute. Alternatively, respondent alleges the court's decision denying his petition was against the manifest weight of the evidence. We affirm.

¶ 2                          BACKGROUND

¶ 3     Petitioner, the State of Illinois (State), filed a petition for adjudication of wardship on August 13, 2010, in the circuit court of Williamson County. The petition alleged that respondent, then a minor, committed the offenses of aggravated criminal sexual assault and aggravated criminal sexual abuse. 720 ILCS 5/12-14(b)(i), 12-16(c)(2)(i) (West 2008). Specifically, the petition alleged that between the dates of January and June 2010, respondent committed aggravated criminal sexual assault when he placed his penis in the mouth of A.L., then under eight years of age. 720 ILCS 5/12-14(b)(i) (West 2008). The petition further alleged that between the dates of January and June 2010, respondent committed aggravated criminal sexual abuse when he touched the vagina of E.B., then under eight years of age, for the purpose of sexual gratification. 720 ILCS 5/12-16(c)(2)(i) (West 2008).

¶ 4     Respondent entered an admission to both allegations on February 15, 2011, and was subsequently adjudicated a juvenile delinquent on two counts of aggravated criminal sexual abuse and assault. 720 ILCS 5/12-14(b)(i), 12-16(c)(2)(i) (West 2008). The court entered an adjudication and disposition order on April 14, 2011, which required respondent to register as a juvenile sex offender under the Act. 730 ILCS 150/3-5 (West

2

2008). Respondent was also placed on probation for five years and home electronic monitoring for 12 months. Respondent registered as a juvenile sex offender on April 15, 2011.

¶ 5    Respondent was discharged from probation on April 29, 2016. On August 19, 2016, respondent filed a petition to terminate his sexual offender registration pursuant to section 3-5(d) of the Act. 730 ILCS 150/3-5(d) (West 2014). Under this section of the Act, a court may terminate the registration of an adjudicated juvenile delinquent if he or she shows, by a preponderance of the evidence, that he or she "poses no risk to the community." 730 ILCS 150/3-5(d) (West 2014). In support of respondent's contention that he posed no risk to the community, respondent asserted that he had completed a current risk assessment, which recommends he be removed from registration; he successfully completed individual sex offender treatment; his sexual offender history and recommendations from counselors indicate he is a low risk and requires no supervision or restrictions; he has resided and attended school in the community without any incidents; and the continued requirement of registration presents an undue burden.

¶ 6    Attached to respondent's petition was a psychosexual risk assessment and evaluation prepared by Linda Stover, a licensed sex offender evaluator. Based on her review of records, clinical interviews, written assessments, and stable and acute risk factors, Stover concluded that respondent should be considered a low risk to the community. Stover opined that respondent had demonstrated he can live an offense-free life and should be given the opportunity to continue his life without having to register as a sex offender. Stover further stated that respondent had completed everything the court

asked of him, he assumes full responsibility for his actions, and he "is very remorseful for all of it." Stover strongly recommended that respondent be removed from the registration law.

¶ 7    In response to respondent's petition, the State filed a petition to allow a risk assessment/evaluation on August 30, 2016, requesting that it be allowed to procure its own risk assessment of respondent performed by an evaluator licensed under the Act. The petition was granted over respondent's objection.

¶ 8    A hearing on respondent's petition to terminate his sexual offender registration was held on December 22, 2016. Two psychosexual risk assessment evaluations were presented to the court: (1) the evaluation prepared by Stover, which we discuss above, and (2) an evaluation prepared by Donya Adkerson, a licensed sex offender evaluator and licensed sex offender treatment provider, which was requested by the Williamson County State's Attorney's Office. Adkerson's evaluation stated that respondent had participated in both residential and outpatient sex offense specific treatment and that he successfully completed the treatment with highly positive reports from his treatment providers. Adkerson opined that respondent had demonstrated a number of strengths in dynamic risk areas and had shown patterns of behavior associated with decreased risk for sexual offense recidivism. Adkerson found the risk of respondent's recidivism to be very low. Regarding registry removal requirements in Illinois, Adkerson opined:

> "Illinois requires a finding that the individual pose no risk to the
> community to be appropriate for registry removal, which presumably would be a

risk level equivalent to community members at large. A finding of no risk is not possible, as some risk for sexual offense exists even among the general population for whom no prior sexual offenses have been identified."

In sum, Adkerson recommended that respondent be released from his sex offender registry requirements because there "is every reason to believe" respondent would not reoffend, and because remaining on the sex offender registry creates risk of destabilization in housing and employment which in turn undermines best functioning.

¶ 9 The court also heard testimony from Misty Lucas, respondent's counselor at the United Methodist Children's Home located in Mount Vernon. Lucas is a licensed counselor. She testified that she worked with respondent from August 2010 until January 2013 on a weekly basis for juvenile sex offender treatment and has had contact with respondent approximately two times per year since that time. Based on her observations of respondent over the past several years, Lucas testified that she had seen great growth in respondent and that respondent had shown remorse and empathy for his victims. Lucas testified she did not consider respondent to be a risk to the community.

¶ 10 The court additionally considered the testimony of respondent and respondent's father, K.D., as well as victim statements. Respondent and K.D. testified that respondent had matured from the time the incidents took place, and opined that respondent posed no risk to the community. The victim statements, read by the mothers of the victims, recounted the appalling encounters between respondent and the minor victims and pleaded that respondent's sex offender registration not be terminated.

5

¶ 11    Following the hearing, the court entered an order on January 18, 2017, denying respondent's petition to terminate his sexual offender registration. The court called the factual basis underlying the adjudication both "disturbing and disgusting" and observed that both of respondent's victims were between two and four years old at the time the offenses were committed. The court found the evidence clearly demonstrated respondent gained the trust of the victims and the victims' parents, and after doing so, respondent repeatedly molested the children over a period of months until he "grew bored." The court noted that respondent chose L.B., one of the victims, because "he could get away with it and she would be easy."

¶ 12    The court further concluded that respondent's testimony lacked credibility. The court found there were inconsistencies regarding respondent's testimony, which were not explained to the court's satisfaction, and observed respondent's manner and tone to be "well-rehearsed" and "less than forthright." The court stated it considered Lucas's testimony that respondent was not a risk to the community, but found it to be of minimal probative value because Lucas had not been in close contact with respondent for approximately three years.

¶ 13    In its conclusion, the court stated, in relevant part:

"[T]he Court finds [respondent] has failed to prove by a preponderance of the evidence that he poses 'no risk' to the community. Both experts found him to be low risk. The Court is unwilling to give that statutory direction a lesser meaning. The Legislature chose to make the standard 'no risk.' Low risk is not the same as

6

no risk. The Court finds by a preponderance of the evidence that [respondent] is a low risk to the community; however, that does not meet the standard set out in 730 ILCS 150 3/5. Based on the evidence presented, the Court cannot find the burden to prove he is no risk to the community has been met."

¶ 14 Respondent filed a motion to reconsider on February 17, 2017. In his motion, respondent indicated that the court denied his petition to terminate his sexual registration because he failed to prove by a preponderance of the evidence under section 3-5 of the Act that he poses no risk to the community. 730 ILCS 150/3-5 (West 2014). Respondent asserted both Stover's and Adkerson's evaluation reports concluded respondent posed the lowest possible risk to the community and that he should be released from his sex offender registry requirements. Respondent argued that the interpretation of this statute to require a complete absence of risk renders it impossible to comply with and, therefore, meaningless. As respondent indicated, Adkerson's evaluation report stated, "[a] finding of no risk is not possible, as some risk for sexual offense exists even among the general population for whom no prior sexual offenses have been identified." Respondent further alleged that he met his burden by a preponderance of the evidence.

¶ 15 The court denied respondent's motion, finding the totality of the evidence leads to the conclusion that respondent is a low risk to reoffend as opposed to no risk. The court rejected respondent's argument regarding statutory interpretation. Specifically, the court concluded:

"The thrust of the argument by [respondent] is that it is impossible to meet the burden of 'no risk' as no expert is likely to ever opine that absolute of an

7

opinion. In fact, both experts in this matter found [respondent] to be 'low-risk' to re-offend. The Court agrees that the statute creates a very high burden on a Petitioner.

* * *

The statute clearly requires the Court to make a finding that the applicant presents no risk to the community. The Court must give that language meaning. No clearly means something different than low. The Court believes Counsel's arguments that it is a very difficult, if not impossible, burden to be persuasive. However, that is a cry to change the legislation. This Court declines to do so."

¶ 16 This appeal followed.

¶ 17 ANALYSIS

¶ 18 Prior to discussing the arguments raised by respondent in this appeal, we address the timeliness of our decision. Pursuant to Illinois Supreme Court Rule 660A(f) (eff. May 1, 2013), which sets forth expedited procedures for appeals in juvenile delinquency proceedings, "[e]xcept for good cause shown, the appellate court shall file its decision within 150 days after the filing of the notice of appeal." Accordingly, the decision in this case was due on September 9, 2017. However, the case was not placed on the oral argument schedule until September 28, 2017. For this reason, there is good cause to issue this decision after the 150-day deadline.

¶ 19 Turning to the merits, respondent raises two arguments on appeal. First, respondent argues the "no risk" requirement under section 3-5(d) of the Act—which, if

proven by a preponderance of the evidence, permits a court to terminate an individual's sexual offender registration—creates an impossible burden to obtain and renders this statutory provision meaningless. Respondent requests that this court reverse and remand this cause with directions regarding the reasonableness of "no risk" under section 3-5(d). Second, respondent argues that the trial court, after considering the seven factors outlined in section 3-5(e) of the Act, erred in denying respondent's petition to terminate his sexual offender registration. We address these contentions in turn.

¶ 20    Because respondent's first argument concerns statutory interpretation, we apply *de novo* review. *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 286 (2008). It is well settled that the primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Brucker v. Mercola*, 227 Ill. 2d 502, 513 (2007). The best indication of legislative intent is the language of the statute itself, and, therefore, our inquiry appropriately begins with the words used by the legislature. *Brucker*, 227 Ill. 2d at 513. Where the statutory language is clear and unambiguous, there is no need to resort to other aids of construction. *Brucker*, 227 Ill. 2d at 513. Further, we may not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *People v. Perry*, 224 Ill. 2d 312, 323-24 (2007). However, where the language used is susceptible to more than one reasonable interpretation, the court may look to additional sources to determine the legislature's intent. *Brucker*, 227 Ill. 2d at 513-14. In order to ascertain the legislature's intent, the court may properly consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved.

9

*People v. Collins*, 214 Ill. 2d 206, 214 (2005). When interpreting the plain language of a statute, we presume the legislature did not intend absurd, inconvenient, or unjust results. *In re Rufus T.*, 409 Ill. App. 3d 969, 975-76 (2011).

¶ 21    The statutory provision at issue in this case is section 3-5 of the Act, which specifies the rights and obligations of juvenile delinquents who are subject to the Act. 730 ILCS 150/3-5 (West 2014). In relevant part, section 3-5 provides:

> "(d) The court may upon a hearing on the petition for termination of registration, terminate registration if the court finds that the registrant poses no risk to the community by a preponderance of the evidence based upon the factors set forth in subsection (e).
>
>    \*\*\*
>
> (e) To determine whether a registrant poses a risk to the community as required by subsection (d), the court shall consider the following factors:
>
>    (1) a risk assessment performed by an evaluator licensed under the Sex Offender Evaluation and Treatment Provider Act [(225 ILCS 109/1 *et seq.* (West 2014))];
>
>    (2) the sex offender history of the adjudicated juvenile delinquent;
>
>    (3) evidence of the adjudicated juvenile delinquent's rehabilitation;
>
>    (4) the age of the adjudicated juvenile delinquent at the time of the offense;
>
>    (5) information related to the adjudicated juvenile delinquent's mental, physical, educational, and social history;

(6) victim impact statements; and

(7) any other factors deemed relevant by the court.

(f) At the hearing set forth in subsections (c) and (d), a registrant shall be represented by counsel and may present a risk assessment conducted by an evaluator who is licensed under the Sex Offender Evaluation and Treatment Provider Act." 730 ILCS 150/3-5(d), (e), (f) (West 2014).

¶ 22    As previously stated, respondent contends that the "no risk" requirement under section 3-5(d) creates an impossible burden. In support of his argument, respondent asserts that experts in the field of sex offender treatment will never make a formal finding lower than "low risk." As respondent indicates, Adkerson's report, which concluded respondent was a "low risk" to the community, stated "[a] finding of no risk is not possible, as some risk for sexual offense exists even among the general population for whom no prior sexual offenses have been identified." Respondent contends it is irrational that a court must make a finding of "no risk" in order to terminate sexual offender registration, but must consider a risk assessment performed by a licensed evaluator pursuant to section 3-5(e) of the Act which will not label a petition lower than "low risk." Respondent further argues the legislative history indicates the court was intended to have discretion in determining whether to grant a petition to terminate sexual offender registration, and the plain language of the statute has stripped the court of that discretion.

¶ 23    After careful consideration, we do not find the statutory language at issue to be ambiguous. Section 3-5(d) clearly requires the court to make a finding, by a preponderance of the evidence, that the applicant poses "no risk" to the community. 730

ILCS 150/3-5(d) (West 2014). The phrase "no risk" requires no construction. As set forth above, where the statute's language is clear and unambiguous, we must apply it as written without resort to extrinsic aids to statutory construction. *Perry*, 224 Ill. 2d at 323. Moreover, the rules of statutory construction dictate that we not look beyond the plain language of the Act unless a literal interpretation would produce an absurd result. *Grams v. Autozone, Inc.*, 319 Ill. App. 3d 567, 570 (2001). Here, we find nothing which suggests "no risk" within the meaning of section 3-5(d) is ambiguous or absurd.

¶ 24    Further, contrary to respondent's assertion, we do not find this provision creates an impossible burden for respondent to obtain. We are also unconvinced by respondent's argument concerning legislative intent. As previously stated, respondent argues the legislative history indicates the court was intended to have discretion in deciding whether to grant a petition to terminate sexual offender registration. Respondent asserts the plain language of section 3-5(d) has stripped the court of discretion, and instead "requires a petitioner to meet the bright-line burden of 'no risk.' "

¶ 25    The Act sets forth a comprehensive scheme providing for the registration of sex offenders. *People v. Beard*, 366 Ill. App. 3d 197, 199 (2006). Our supreme court has observed that "the legislature's intent in requiring registration of sex offenders was to create an additional measure of protection for children from the increasing incidence of sexual assault and child abuse." *People v. Malchow*, 193 Ill. 2d 413, 420 (2000). Protection of the public, rather than punishing sex offenders, is the intent of the Act. *People v. Bonner*, 356 Ill. App. 3d 386, 388-89 (2005). Regarding section 3-5 of the Act, the Second District Appellate Court has observed that this provision "was intended to

protect the rights of juveniles who committed less serious sex offenses and prevent them from having to spend their adult lives registered as sex offenders." *In re Rufus T.*, 409 Ill. App. 3d at 974.

¶ 26    The legislative history of section 3-5 shows the legislature intended to create an outlet that would apply in certain cases. Specifically, the legislature envisioned that some juveniles would be able to obtain relief from the continuous burden of being registered as a sex offender. To obtain relief, the legislature adopted a preponderance of the evidence as the burden of proof. Our supreme court has defined a preponderance of the evidence as that evidence which renders a fact more likely than not. *People v. Brown*, 229 Ill. 2d 374, 385 (2008). After careful consideration, we find this burden is not unreasonable or impossible to satisfy. If the statute employed an "impossible burden" as respondent suggests, it would be a much heavier burden of proof such as beyond a reasonable doubt or clear and convincing evidence. By adopting a preponderance of the evidence as the burden of proof, the legislature afforded petitioners the opportunity to prove they pose "no risk" to the community. In this case, the court, after considering the factors outlined in section 3-5(e) of the Act (which included the evaluations concluding respondent was a low risk to the community), simply determined respondent failed to meet that burden. 730 ILCS 150/3-5(e) (West 2014). It is clear that the burden of proof adopted by the legislature is not unreasonable or unattainable.

¶ 27    In sum, we do not find that the "no risk" requirement under section 3-5(d) creates an impossible burden. Although we agree the statute creates a very high burden on respondent, a showing of "no risk," while under limited circumstances, is not

13

unreasonable or impossible to obtain. It was possible for respondent to prove he posed no risk to the community by a preponderance of the evidence. We further note that the offenses committed by respondent are a far cry from the "less serious sex offenses" section 3-5 is intended to protect. For these reasons, we reject respondent's argument.

¶ 28   Respondent's second argument on appeal alleges that the trial court erred in denying his petition to terminate sexual offender registration. As previously stated, section 3-5(d) of the Act provides that a court may terminate a sexual offender's registration if it finds the registrant poses "no risk" to the community by a preponderance of the evidence. 730 ILCS 150/3-5(d) (West 2014). Again, our supreme court has defined a preponderance of the evidence as the amount of evidence that leads a trier of fact to conclude a fact is more probable than not. *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004). Thus, respondent was required to submit sufficient evidence to the court that it was more probable than not he posed "no risk" to the community. As previously stated, in order to make such a determination, section 3-5(e) of the Act directs the court to consider the following factors: a risk assessment performed by a licensed evaluator; sex offender history and evidence of rehabilitation of the adjudicated juvenile delinquent; the age of the adjudicated delinquent at the time of the offense; information about the mental, physical, educational, and social history of the adjudicated juvenile delinquent; victim impact statements; and any other factors deemed relevant by the court. 730 ILCS 150/5-3(e) (West 2014).

¶ 29   In this case, the trial court found respondent failed to meet his burden of establishing he posed "no risk" to the community. In reviewing the trial court's

conclusion on appeal, we are confined to deciding whether it was against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002) ("In close cases, where findings of fact depend on the credibility of witnesses, it is particularly true that a reviewing court will defer to the findings of the trial court unless they are against the manifest weight of the evidence."). A decision is against the manifest weight of the evidence only where an opposite conclusion is clearly apparent or where the findings appear to be unreasonable, arbitrary, or not based on the evidence presented. *Eychaner*, 202 Ill. 2d at 252. Under the manifest weight standard, great deference is afforded to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). As the trial court sits in a superior position to observe the parties and witnesses, we will not substitute our judgment for that of the trial court regarding the credibility of the witnesses, the weight to be given the evidence, or the inferences to be drawn. *Best*, 223 Ill. 2d at 350-51. In other words, we must draw all reasonable evidentiary inferences in support of the trial court's judgment, and the trial court's judgment will not be reversed unless an opposite conclusion is clearly apparent. *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 599 (2000).

¶ 30    Here, respondent presented evidence that showed he made progress through his efforts in rehabilitation. This evidence included the evaluations conducted by Stover and Adkerson, which concluded respondent was a low risk to the community and recommended that respondent be released from his sex offender requirements. The court also heard testimony from Lucas, respondent's treatment provider at the United

15

Methodist Children's Home, who testified that respondent had completed all of his treatment and therapy requirements, and who opined that respondent posed no risk to the community. The court was aware respondent had completed his required evaluations and treatments and acknowledged respondent had made improvements in his evaluations over the years. The court also acknowledged respondent's evaluators thought highly of him. The court was further aware that respondent was in the process of successfully continuing his education in college, and stated it was impressed with respondent's support structure.

¶ 31 However, the court questioned the reliability of respondent's testing. The court noted Adkerson's testing of respondent contained inconsistent response patterns that could reduce the validity of the test results and found Adkerson's report of respondent having questionable impulse control to be of concern. The court also noted it was concerned with the State's evaluation conducted after respondent's sentencing, which cautioned there may be a misleading impression of rapid progress, and found Lucas's testimony to be of minimal probative value because Lucas had not been in close contact with respondent for more than three years.

¶ 32 Furthermore, the court made detailed findings that clearly support its decision denying respondent's petition. Specifically, the court found respondent's testimony lacked credibility, as there were inconsistencies regarding respondent's testimony, which were not explained to the court's satisfaction. The court concluded respondent's "manner and tone seemed well-rehearsed and appeared to be less than forthright" and was concerned with respondent's maturity and the effect of releasing him from registration while the victims are still minors. The court concluded that continued registration would

offer some protection to the minor victims without risk that the victims would have to reveal to third parties the circumstances of the incidents in order to avoid situations where respondent is present. While the court determined respondent proved by a preponderance of the evidence that he is a "low risk" to the community, it concluded he failed to meet his burden of establishing he poses "no risk" to the community as required under section 3-5(d) of the Act. 730 ILCS 150/3-5(d) (West 2014).

¶ 33   In light of the foregoing, we cannot say that the trial court's decision denying respondent's petition was against the manifest weight of the evidence. A careful review of the record shows the court was presented conflicting testimony and evidence, and the court weighed that conflicting testimony and evidence accordingly before reaching its decision denying respondent's petition. The record further shows that in reaching its decision, the court appropriately considered the seven factors listed under section 3-5(e) of the Act. 730 ILCS 150/3-5(e) (West 2014). As a reviewing court, we will not reverse a trial court's decision simply because we might have reached a different conclusion based on conflicting evidence. *Bank of Elk Grove v. City of Joliet*, 167 Ill. App. 3d 457, 461 (1988). As previously stated, this is because the trial court sits in the best position to observe the conduct and demeanor of the witnesses. Here, although we may have weighed the evidence differently, we cannot say the court's judgment was unreasonable, arbitrary, or not based on the evidence. Accordingly, we reject respondent's argument.

¶ 34                                    CONCLUSION

¶ 35    In sum, we conclude that section 3-5(d) of the Act clearly requires an individual to prove he poses "no risk" to the community by a preponderance of the evidence in order to permit a court to terminate his or her sexual offender registration. This is not an impossible burden to obtain. However, considering that medical experts refuse to label an offender as "no risk" (the lowest recognized category by the treatment providers in this case was "low risk" or "lowest possible risk"), we encourage the legislature to reconsider that standard. We further conclude that the court's decision denying respondent's petition was not against the manifest weight of the evidence. For these reasons, we affirm the order of the circuit court of Williamson County, denying respondent's petition to terminate his sexual offender registration. We note that nothing in this opinion prevents respondent from seeking relief in the future.


¶ 36    Affirmed.

2017 IL App (5th) 170133

NO. 5-17-0133

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* T.J.D., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Williamson County. |
| | ) | |
|    Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10-JD-26 |
| | ) | |
| T.J.D., | ) | Honorable |
| | ) | Jeffrey A. Goffinet, |
|    Respondent-Appellant). | ) | Judge, presiding. |

_____

**Opinion Filed:**   **November 16, 2017**

_____

**Justices:**   Honorable Richard P. Goldenhersh, J.

       Honorable John B. Barberis, J., and
       Honorable David K. Overstreet, J.,
       Concur

_____

**Attorney for Appellant**   Andrew T. Flynn, Lawler Brown Law Firm, 1600 W. Main Street, P.O. Box 1148, Marion, IL 62959

_____

**Attorneys for Appellee**   Hon. Brandon Zanotti, State's Attorney, Williamson County Courthouse, Marion, IL 62959; Patrick Delfino, Director, David J. Robinson, Acting Deputy Director, Patrick D. Daly, Sharon Shanahan, Staff Attorneys, Office of the State's Attorneys Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____